The **CENTURY INDEMNITY COMPANY**, Plaintiff-Appellant,

v.

**Dan SERAFINE** and **Francis De Rosa**, Defendants-Appellees.

No. 13727.

United States Court of Appeals
Seventh Circuit.

Jan. 9, 1963.

Herbert C. Loth, Jr., Chicago, Ill., Harold W. Huff, John W. Gilligan, Chicago, Ill., Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., of counsel, for appellant.

John G. Phillips, Allan R. Bloch, Chicago, Ill., Sturman & Bloch, Chicago, Ill., for appellee Dan Serafine.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, The Century Indemnity Company, (hereinafter called "Century") sought declaratory judgment that Century was not obligated to defend defendant Dan Serafine, its insured, in an action brought against him by the other defendant, Francis De Rosa, in the Superior Court of Cook County, Illinois, or to pay any judgment which might be entered against its insured in that case.

Century asserted that its insured breached Condition 2 of his comprehensive personal liability policy with Century

in that he failed to give notice of the "occurrence" involving Dr. De Rosa during which he was allegedly injured while riding one of the insured's horses, "as soon as practicable" as required by the policy.

The District Judge, after trial without a jury, entered findings of fact and conclusions of law, and a declaratory judgment that Century was obliged to defend the Superior Court case, and to pay any sums recovered in connection with the accident out of which that suit arose. Plaintiff has appealed asserting that the facts as found by the District Court are erroneous.

Century received its first notice of any claim made against the insured by Dr. De Rosa and its first notice of the occurrence which gave rise to the claim when it was orally notified on March 3, 1959, that summons and complaint had been served on Dan Serafine. The complaint, received in Century's office the next day, asserted a claim for personal injury sustained while riding a horse owned by the insured on November 20, 1957. Century's claim supervisor, William Philippi, testified that he called Mr. Serafine's attorneys on March 6, 1959, to advise that Century could not undertake the defense because of the late notice, and Century's limited information. Subsequently, under date of March 27, 1959, a formal demand was made on Century to defend the Superior Court action.

Century lists a number of inconsistencies and contradictions in the testimony of its insured (both at the trial and in his answers to questions put to him by Century's investigator prior to trial) and in the evidence of Dr. De Rosa on deposition. For example, Mr. Serafine testified at the trial that on the day of the "occurrence," Dr. De Rosa complained of a slight backache, which he thought was only a normal incident to horseback riding, and that Dr. De Rosa did not mention that the insured's horse had stumbled or that he had sustained any injury; that the insured's own first notice of the injury came with service of a summons on February 7, 1959. He stated further

that when he dined with Dr. De Rosa in September, 1958, at a country club, he mentioned that the horse which Dr. De Rosa had been riding had a tendency to stumble; that Dr. De Rosa then said that the horse had stumbled with him on November 20, 1957, but mentioned no injury. Dr. De Rosa, on the other hand, stated on deposition that he told the insured about the injury when they had dinner in the country club. On March 8, 1959, Century's investigator talked with insured and obtained a question and answer statement which was recorded by a court reporter. In his testimony, Mr. Serafine indicated only a vague recollection of this interview. He admitted making certain statements to someone about that time. When asked whether he lived at 961 East Rand Road, Mount Prospect, Illinois, on Sunday, March 8, 1959, he said he did not live there and that the address was unfamiliar to him. He had no recollection of giving any statements there at any time. He did recall an investigator who called at his office, but remembered no court reporter. When counsel for Century read questions and answers from this interview, Mr. Serafine remembered some of the questions and admitted giving the answers read. Other questions he said he did not remember. Sometimes he offered explanations or amplifications of answers read to him as given on March 8, 1959.

He testified that somebody did telephone to ask whether he owned horses and that he answered "yes." He had also told the investigator for Century that he had been closing a deal at the Torrens Office when somebody from the office of Mr. Phillips, the attorney who later filed suit on behalf of Dr. De Rosa, met him there and attempted to secure a statement before a public stenographer. Mr. Serafine said he had refused to make such a statement. There is some confusion in Mr. Serafine's account at the trial of this meeting in the Torrens Office. His final statement concerning it was "I don't believe I told him very much at that particular time." At one point in the cross-examination, however, there is an indica-

tion that he told "some of the facts" to the representative, although he also said he felt that he "should not be doing too much talking" and that he checked with his insurance broker.

When asked at the trial whether he knew that Dr. De Rosa had fallen from the horse on November 20, 1957, he answered: "Well, he was walking the horse around, I don't know." The report of the March 8, 1959, interview indicated that when asked the length of time lapse before he learned of the fall, Mr. Serafine said: "Well, I would say within maybe a half hour, three-quarters of an hour," and later that he saw Dr. De Rosa, and "he was off the horse. * * * Well, he was holding his back and I asked him what had happened. * * * [H]e was sort of in a crouched position. I asked him what happened because he was off of the horse and he said he had gotten thrown. I hadn't seen him thrown, I had no way of knowing." When asked at the trial whether he had given those answers, Mr. Serafine said, "Yes, but I had no knowledge of him being hurt."

In his deposition, Dr. De Rosa said that the horse stumbled, went down on his knees, and jarred Dr. De Rosa both when going down on his knees and when jumping back up. From his statements on deposition, it appears that Dr. De Rosa was never thrown. He said he "walked" the horse back. When asked if he dismounted to lead the horse back, he said "no." He also said there was no one about at the time; that he did not meet Mr. Serafine until about two hours later at lunch and that he said nothing about the incident at that time. He explained that the pain passed away and he thought he had "some type of muscle spasm and nothing to worry about."

The District Judge who heard these inconsistent accounts may have believed that Mr. Serafine was honestly mistaken and was describing a totally different incident in which somebody had been thrown or had fallen from his horse without suffering any injury.

The report of the interview on March 8, 1959, includes statements from Mr. Serafine regarding his frequent visits to Dr. De Rosa to accompany his wife who was receiving monthly treatments. On those occasions he said Dr. De Rosa sometimes complained of pain, mentioned having x-rays and finding an injury in his back. Mr. Serafine said he never reported this information to the insurance company because he didn't know that these complaints arose out of an accident with his horse.

From the examples given, it is apparent that these inconsistencies and contradictions presented issues of credibility for the Trial Court. Although inconsistent statements may impair the credibility of the witness making them, they are not substantive evidence that the facts are diametrically opposite to the statements made. The experienced District Judge saw and heard Mr. Serafine. The weight of his explanations of the apparent conflicts in his various statements was a matter for the Trial Judge's determination. Similarly, the drawing of reasonable inferences from the evidence is a function of the Trial Court. Snorgrass v. Sears, Roebuck, 7 Cir., 1960, 275 F.2d 691, 693. We may not disturb the findings on such inferences unless they are clearly erroneous. Central Ry. Signal Co. v. Longden, 7 Cir., 1952, 194 F.2d 310. We find nothing in this record to show the findings of facts or the inferences therefrom to be erroneous.

The District Court found that Dr. De Rosa did not report his experience to Dan Serafine; that Dr. De Rosa first realized he might have a cause of action in September, 1958, when he learnt that the horse had a tendency to stumble; that he then engaged counsel; that service of the summons on or about February 7, 1959, was the first notice of the "occurrence and claim * * * within the meaning of provisions 2 and 3 of 'conditions' of the plaintiff's policy." Under the circumstances, the District Court concluded that Dan Serafine did not unreasonably delay report of the claim for injury; that he could not reasonably have known that Dr. De Rosa was injured or

that he might make a claim; that he notified Century "as soon as practicable."

From our study of the record in the light of the peculiar circumstances of this case, we cannot say that the findings are "clearly erroneous." Federal Rules of Civil Procedure, Rule 52. Our scrutiny of the evidence does not leave us with that firm conviction that a mistake has been made which would permit us to disregard the findings made by the Trial Judge. Nor can we agree with the plaintiff that the Court equated "occurrence" with "claim" in mentioning both; or misunderstood the plaintiff's theory of the case by references to Condition 3 (notice of claim or suit) as well as to Condition 2 (notice of occurrence) on which Century specifically relies. There was some evidence respecting notice of suit. There had been a misdelivery of the summons by the insurance broker who sent it to a different insurance company in error. That caused a delay of 10 days, as evidenced both by the covering letter, when the summons was ultimately delivered to Century, and by the testimony of Mr. Philippi, Century's claim supervisor.

■ It was Mr. Serafine's duty to report to Century any occurrence which a reasonably prudent man would have had reason to believe was covered by the provisions of the policy and upon which a claim could reasonably be urged. Hoffman & Klemperer Co. v. Ocean Accident and Guarantee Corporation Ltd., 7 Cir., 1961, 292 F.2d 324; Cf. Hartford Accident & Indemnity Co. v. Lochmandy Buick Sales, Inc., 7 Cir., 1962, 302 F.2d 565. In the Hartford case, Ernest Miller, a part-time non-salaried salesman employee of the insured, Lochmandy Buick Sales, Inc., while driving his own automobile in a parade on June 23, 1956, ran into Charles Ruklic and broke the latter's leg. Three days later, the insured's president learned of the details of the occurrence from Mr. Miller and was informed that the matter had been turned over to Mr. Miller's own insurer. His next notice was a letter of April 30, 1958, of intention to sue, which he sent to Hartford's agent. The president of the insured did not notify Hartford earlier because he had decided that he was not involved in the matter, and because, in any case, Mr. Miller carried his own insurance. Mr. Miller's insurer secured a covenant not to sue from Mr. Ruklic in return for $14,000. Mr. Ruklic sued Lochmandy Buick Sales as Mr. Miller's principal. As Judge Kiley, speaking for this Court in the Hartford case, stated:

"Differing fact situations * * * produce different results under the general rule; * * *".

In Hartford, the District Court held that the insured's president did not act as a reasonably prudent person, and that the insurer was under no duty to defend the insured or to pay any judgment obtained against it. That decision was affirmed by this Court.

■ On the District Court's findings, supported by the evidence, Dan Serafine had no reason to believe that the incident of November 20, 1957, was such an occurrence as contemplated in Condition 2, until the Superior Court action was filed and summons served upon him.

■ Plaintiff also contends that if the Trial Judge found Dan Serafine to be telling the truth at the trial, he must, of necessity, have found his statements to the investigator on March 8, 1959, to be false. Hence, plaintiff argues, there was a breach of Condition 4 which requires the insured to cooperate with the insurer. We cannot agree that the one necessarily follows from the other. We have considered all other arguments advanced by the plaintiff but find them to be lacking in merit. The judgment of the District Court is affirmed.

Affirmed.