# UNITED STATES of America, Plaintiff-Appellee,

v.

# Steven Ralph TAVARES, Defendant-Appellant.

## No. 74–2538.

United States Court of Appeals, Ninth Circuit.

Feb. 6, 1975.

Donald B. Marks (argued), Beverly Hills, Cal., for defendant-appellant.

Michael C. Solner, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before ELY and WALLACE, Circuit Judges, and TURRENTINE,* District Judge.

## OPINION

PER CURIAM:

The appellant, Steven Ralph Tavares, was indicted for Interstate Transportation of Stolen Property (18 U.S.C. § 2314) on March 11, 1974. He was found guilty by jury trial on May 31, 1974, and was sentenced to five years in custody on June 24, 1974. Tavares appealed his conviction on the ground that the trial court improperly instructed the jury that the prior inconsistent statements of a witness, the co-defendant Darlene Holding, could be considered as substantive evidence of the defendant's guilt.[1]

---

* Honorable Howard B. Turrentine, United States District Judge, Southern District of California, sitting by designation.

1. The other grounds, which we do not consider here, were improper limitation of cross examination, improper denial of motion for mistrial, based on prejudiced testimony, and improper grant of immunity to a government witness without prior written approval and authorization pursuant to 18 U.S.C. § 6003.

## BACKGROUND

On the evening of December 7, 1973, Lawrence Miller, a resident of Port Orford, Oregon, returned home and discovered his house had been burglarized. Missing was approximately $98,000 in cash which had been taken from a deep freeze.

A subsequent FBI investigation indicated that Harold Reinhardt, Miss Holding, and Tavares may have committed the burglary and transported the money to California. Only the defendant Tavares was brought to trial. Reinhardt died prior to trial and Miss Holding obtained a grant of immunity so that she might testify as a government witness at the trial of Tavares.

At the trial Miss Holding surprised the prosecutor by testifying that Tavares had nothing to do with either the burglary or the transportation of the stolen currency. She stated that in early December 1973, Tavares drove her and Reinhardt from Orange County, California, to Port Orford, Oregon, where they stopped at Battle Rock, a state park located near the Miller residence. Miss Holding and Reinhardt borrowed Tavares' car on the pretext of going to a store and drove to the Miller residence, and, according to Miss Holding, Reinhardt burglarized the house while she kept wait outside. Twenty minutes later they rejoined Tavares at the beach and the three returned to Orange County. Miss Holding claimed she and Reinhardt divided the money and never informed Tavares of the burglary or their possession of the money.

On further direct examination by the government, Miss Holding admitted that on December 18, 1973, shortly after the burglary, she told FBI Special Agent Philip Hanlon that Tavares had entered the Miller house with Reinhardt while she waited outside, and that the three had immediately returned to California and divided the money three ways. She also admitted that Willie Stansbury, an

investigator for the Orange County Sheriff, interviewed her just before trial on May 24, 1974, but denied she made any statement to him regarding Tavares' involvement in the burglary.

The government called Agent Hanlon and Investigator Stansbury as witnesses. They stated that Miss Holding had told them that both Tavares and Reinhardt entered the house, that the money was divided three ways, and that she, Reinhardt, and Tavares returned to California together.

The attorney for the defense objected to the admission of Miss Holding's prior inconsistent statement as substantive evidence. The trial judge overruled the objection and gave the jury the following instruction:

> During the course of the trial evidence was produced showing that witness Darlene Holding had at some time prior to her testimony in this trial made statements to an agent of the Federal Bureau of Investigation and to an officer of the Orange County Sheriff's Department which were inconsistent with her testimony at trial. You are instructed that if you believe she made those prior statements, you may consider such prior statements not only as evidence bearing upon the credibility of her live testimony, but also as evidence of the defendant's guilt. (R.T. 269).

## PRIOR INCONSISTENT STATEMENTS

In preparing his jury instructions the judge indicated he relied on California Evidence Code § 1235 [2] as interpreted by the Comment of the California Law Revision Commission. The Comment states that prior inconsistent statements may be admitted to prove the truth of the matter asserted for the following reasons:

> Section 1235 admits inconsistent statements of witnesses because the dangers against which the hearsay

---

2. Section 1235 provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

rule is designed to protect are largely nonexistent. The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court. Moreover, Section 1235 will provide a party with desirable protection against the "turncoat" witness who changes his story on the stand and deprives the party calling him of evidence essential to his case.

The rule proposed in the Comment is constitutionally valid. In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court overruled the previous decisions of the California Supreme Court[3] and held that the confrontation clause of the Sixth Amendment, as applied to the states by the Fourteenth Amendment, was not violated by admitting a declarant's out-of-court statements as affirmative evidence as long as he is testifying as a witness at trial and is subject to full cross-examination. However, the Court noted that § 1235 was the "considered choice of the California Legislature" and did not pass on the desirability of the statute as a rule of evidence.[4]

■ Section 1235 is in derogation of the common law. The orthodox rule is that prior inconsistent statements may be used to impeach, but should not be treated as having any substantive or independent testimonial value. 3A J. Wigmore, Evidence § 1018 at 996 (3d ed. 1940). Although harshly criticized,[5] the orthodox rule is the law of this circuit and every circuit.[6] Exceptions have been recognized where a prior inconsistent statement occurred in a former trial

3. People v. Green, 70 Cal.2d 654, 75 Cal.Rptr. 782, 451 P.2d 422 (1969); People v. Johnson, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968), cert. denied 393 U.S. 1051, 89 S.Ct. 679, 21 L.Ed.2d 693 (1969).

4. The Supreme Court appeared to retreat from its earlier position in Bridges v. Wixon, 326 U.S. 135, 153–154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103 (1954), that prior inconsistent statements are not admissible as substantive evidence. There the Court said:

> We may assume [prior inconsistent statements] would be admissible for the purposes of impeachment. But they certainly would not be admissible in any criminal case as substantive evidence. Hickory v. United States, 151 U.S. 303, 309 [14 S.Ct. 334, 336, 38 L.Ed. 170]; United States v. Block [2 Cir.,] 88 F.2d 618, 620. To so hold would allow men to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded.

5. "The rule limiting the use of prior statements by a witness subject to cross-examination to their effect on his credibility has been described by eminent scholars and judges as 'pious fraud,' 'artificial,' 'basically misguided,' 'mere verbal ritual,' and an anachronism 'that still impede(s) our pursuit of the truth.' " United States v. De Sisto, 329 F.2d 929, 933 (2d Cir.), cert. denied 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

Criticism of the orthodox rule is found in 3A J. Wigmore, Evidence § 1018 (3d ed. 1940); C. McCormick, Evidence § 39 (1953); Maguire, The Hearsay System; Around and Through the Thicket, 14 Vand.L.Rev. 741 (1961); Morgan, Hearsay Dangers and the Application of the Hearsay Concept, 63 Harv. L.Rev. 177, 192–96 (1948).

For a recent article supporting the orthodox view, see Reutlinger, Prior Inconsistent Statements: Presently Inconsistent Doctrine, Hastings L.J. 361 (1974).

6. United States v. Clardy, 472 F.2d 578 (9th Cir. 1973); Benson v. United States, 402 F.2d 576 (9th Cir. 1968); Subecz v. Curtis, 483 F.2d 263, 267, n.1 (1st Cir. 1973); United States v. Pfingst, 477 F.2d 177, 198 (2d Cir.), cert. denied 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (1973); United States v. Small, 443 F.2d 497, 500 (3rd Cir. 1971); United States v. Maddox, 394 F.2d 297, 299 (4th Cir. 1968); United States v. Hill, 481 F.2d 929, 932 (5th Cir.), cert. denied 414 U.S. 1115, 94 S.Ct. 847, 38 L.Ed.2d 742 (1973); United

or grand jury testimony. United States v. De Sisto, 329 F.2d 929 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); United States v. Nuccio, 373 F.2d 168 (2d Cir. 1967); or where the witness affirms the truth of the prior statement. Zimberg v. United States, 142 F.2d 132, 136 (1st Cir.), cert. denied, 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573 (1944); McIntyre v. Reynolds Metals Company, 468 F.2d 1092, 1094 (5th Cir. 1972).

The controversy over prior inconsistent statements has been resolved to some extent by the enactment of the new Rules of Evidence, Pub.L. No. 93–595 (Jan. 2, 1975), 43 U.S.L.W. 137. Rule 801(d)(1) provides that:

> A statement is not hearsay if—
>
> (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, . . . [7]

Section 801(d)(1)(A) thus codifies the orthodox rule with an exception as to statements made in specified prior judicial proceedings. Since application of this rule is mandatory within 180 days of enactment,[8] this court sees no reason to

diverge from the orthodox rule at this time, at least as far as statements not made in prior judicial proceedings are concerned. Miss Holding's testimony was hearsay, and was inadmissible to prove the truth of the matter asserted.

It only remains to consider whether the admission of Miss Holding's extrajudicial statements constituted reversible error. The other evidence against the defendant Tavares consisted of: (1) Tavares' presence in the vicinity of the burglary, (2) Tavares' driving the car containing the stolen money from Oregon to California, (3) the statement of a government witness, Curtis L. Monks, that he met Tavares in Hawaii in January 1974, and that Tavares "said that he had made an acquaintance of some people and that they had informed him of where there could be some money at, and that they had went there and gotten it," (RT. 154), and (4) Miss Holding's testimony that her share of the proceeds was only $25,000—indicating there may have been a three way split between her, Reinhardt and a third individual. These factors have some probative force, but clearly Miss Holding's statement to the FBI agent and Orange County Sheriff investigator were the strongest and the only direct evidence against Tavares. Their admission was not harmless error. F.R.Crim.P. 52(a).

Reversed and remanded.

---

States v. Lester, 491 F.2d 680, 682 (6th Cir. 1974); Century Indemnity Company v. Serafine, 311 F.2d 676, 679 (7th Cir. 1963); United States v. Bensinger, 430 F.2d 584, 595 (8th Cir. 1970); United States v. Lemon, 497 F.2d 854, 857 (10th Cir. 1974); United States v. Wright, 160 U.S.App.D.C. 57, 489 F.2d 1181, 1187 (1973).

7. As originally drafted by the Advisory Committee, Rule 801 defined prior inconsistent statements out of the hearsay rule entirely. It read:

> A statement is not hearsay if—
> (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and

is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony . . . . .

8. The preamble to P.L. 93–595 provides:

> The following rules shall take effect on the one hundred and eightieth day beginning after the date of the enactment of this Act. These rules apply to actions, cases, and proceedings brought after the rules take effect. These rules also apply to further procedure in actions, cases, and proceedings then pending, except to the extent that application of the rules would not be feasible, or would work an injustice, in which event former evidentiary rules apply.