35 F.3d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Subramaniam V. VIJENDIRA, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 93-10714.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 10, 1994.
Decided Sept. 6, 1994.
 
 Before: NORRIS, THOMPSON and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Subramaniam V. Vijendira appeals his conviction for two counts of alien smuggling and two counts of visa fraud. He argues there is insufficient evidence to support his conviction. Vijendira also asserts his conviction should be reversed because of errors before the grand jury, failure of the government to provide exculpatory evidence until just prior to trial, and a variety of trial errors. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.[1]
 
 DISCUSSION
 A. Sufficiency of the Evidence
 
 3
 Vijendira's first argument is that there was insufficient evidence to support his conviction for alien smuggling and visa fraud. "In reviewing a sufficiency of the evidence claim, this court must affirm the verdict if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. McClendon, 782 F.2d 785, 790 (9th Cir.1986) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original).
 
 1. Visa Fraud
 
 4
 Vijendira was indicted and convicted on two counts of visa fraud. 18 U.S.C. Sec. 2 provides:
 
 
 5
 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
 
 
 6
 (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.
 
 
 7
 18 U.S.C. Sec. 1546(a) provides for criminal penalties for anyone who
 
 
 8
 knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa ..., or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa ... knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; or ...
 
 
 9
 knowingly makes under oath, or as permitted under penalty of perjury under section 1746 of title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, ... or knowingly presents any such application ... containing any such false statement....
 
 
 10
 Four of the visa applications falsely stated that the applicants had not previously applied for and been denied visas. All six of the applications represented that the applicants desired only to travel from Saipan, through the United States (Guam), to Ponape, and back to Saipan. Viewed in the light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Vijendira procured the commission of an offense against the United States by helping the aliens obtain visas, knowing they were procured by false statements.
 
 
 11
 Vijendira played an active role in helping the aliens obtain the visas and making the flight arrangements. Vijendira gave the aliens the visa applications, translated the applications, and showed the aliens where to sign. Vijendira first attempted to get 14 visas from the United States Consulate at Osaka, representing that the applicants wanted to go to Belize. When this was not successful, the destination was changed to a more believable one, Ponape. Vijendira requested that his travel agent prepare itineraries for this new destination, yet never purchased tickets for Ponape. New applications were filled out for trips to Ponape. However, after the visas were granted, Vijendira purchased tickets for himself and the aliens to go to yet another destination, Bermuda. Instead of going to Bermuda, the aliens entered the United States and then went to Canada where they applied for political asylum.
 
 
 12
 Roper and Jess, the officials who issued the visas, testified it would have made a difference in their decisions if they had been aware that some of the aliens were previously denied visas. The consulate officials testified about the importance of the destination in the decision to grant or deny a visa, and testified that had they known the aliens did not intend to go to Ponape, that knowledge would have made a difference in their decisions to issue the visas. None of the aliens went to the location stated in his application. Some of the aliens did not even know the geographic locations of Ponape, Belize, or Bermuda.
 
 
 13
 The aliens earned only $1.75 an hour plus overtime, and two of them testified that they took their entire life savings with them to spend on the "vacation." It is incredible these aliens would spend all the money they had on vacations when they had families to support. During one of the flights, one of the aliens told an FBI agent who happened to be sitting next to him that he was going to America for work. In addition, some of the aliens' passports had the last page glued to the cover, concealing the fact they had previously been denied visas.
 
 
 14
 Based on the travel plans, changes, and other circumstances outlined above, a reasonable trier of fact could conclude the aliens never intended to go to Ponape, as their visa applications represented, but instead planned on going to Canada by way of the United States in an attempt to obtain asylum. Based on Vijendira's handling of the travel arrangements, a reasonable trier of fact could conclude he was fully aware of and helped orchestrate this plan. Due to Vijendira's close involvement, a reasonable trier of fact could also conclude that he was aware some of the visa applications falsely stated the applicants had not previously been denied visas. We conclude sufficient evidence supports Vijendira's conviction for visa fraud.
 
 2. Alien Smuggling
 
 15
 8 U.S.C. Sec. 1324(a)(1)(D) imposes criminal penalties on any person who "encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law...."
 
 
 16
 Sufficient evidence supports a finding that Vijendira encouraged or induced the aliens to enter the United States. Vijendira admits he bought the tickets with money from FAMCO Construction, a company in which he was a partner and served as manager, and that FAMCO provided the aliens with travel money. In addition, as explained above, Vijendira played an active role in the entry of the aliens into the United States.
 
 
 17
 Vijendira argues that the entry of the aliens was not in violation of the law because on their faces the visas did not restrict such travel. However, because sufficient evidence supports a finding that the visas were obtained by visa fraud, sufficient evidence supports a finding that the entry was in violation of the law.
 
 
 18
 Sufficient evidence also supports a finding that Vijendira knew, or acted in reckless disregard of the fact, that the entry of the aliens into the United States was a violation of the law. Considering his close involvement with the travel plans and visa applications, the evidence was sufficient for a rational trier of fact to find that Vijendira knew the aliens were entering the United States based on visas obtained through false statements.
 
 B. Alleged Errors Before the Grand Jury
 
 19
 Vijendira contends the government committed the following errors before the grand jury: presented hearsay evidence; failed to call aliens Rasa, Ganesrajah and Panneerselvam, who Vijendira claims would have offered exculpatory evidence; and the prosecutor "testified" to a "considerable portion of the evidence on specific elements of the alleged crimes ... with no foundation or corroboration, or [which] was introduced as unsubstantiated foundation in questions to witnesses." We reject this argument.
 
 
 20
 Assuming these errors occurred and that they were in fact errors, they do not warrant reversal. Even if a defendant is prejudiced because a violation substantially influenced the grand jury's decision to indict, "[i]f ... a petit jury subsequently convicts a defendant of the charges upon which he was indicted, 'any error in the grand jury proceeding connected with the charging decision [is deemed] harmless beyond a reasonable doubt.' " People of Territory of Guam v. Muna, 999 F.2d 397, 399 (9th Cir.1993) (quoting United States v. Mechanic, 475 U.S. 66, 70 (1986)). "In such a case, dismissal of the indictment will be appropriate only where 'the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair.' " Id. (quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988)). "[Contentions] that the government failed to present some evidence and improperly presented other evidence to the grand jury.... are not so fundamental as to give rise to the right not to be tried." United States v. Moreno-Green, 881 F.2d 680, 684 (9th Cir.1989) (citing Midland Asphalt Corp. v. United States, 109 S.Ct. 1494, 1499 (1989)).
 
 
 21
 C. The Government's Failure to Provide Exculpatory Statements by Government Witnesses Until the Friday Before Trial
 
 
 22
 On June 25, 1993, the Friday before the start of trial, the government provided Vijendira with Ganesrajah's statement that Vijendira was not the leader of the group and that work associates suggested the change in travel plans from Ponape to Bermuda. Vijendira argues the failure to disclose this information sooner violated the district court's order directing the prosecution to provide Vijendira with discovery, and violated the requirement of disclosure in Brady v. Maryland, 373 U.S. 83 (1963). "We review de novo challenges to a conviction based on alleged Brady violations. United States v. Woodley, 9 F.3d 774, 777 (9th Cir.1993) (citing United States v. Aichele, 941 F.2d 761, 764 (9th Cir.1991)).
 
 
 23
 Brady evidence is material "only if 'there is a reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different.' " Id. (quoting United States v. Bagley, 473 U.S. 667, 682 (1984)). Although the prosecution must produce Brady material when it is still of "substantial value to the accused," the prosecution is not required to make disclosure before trial. Id. (citing Aichele, at 764)).
 
 
 24
 As Vijendira concedes, the disclosure was made. Rasa, Ganesrajah and Panneerselvam were listed on the government's witness list filed June 22. Vijendira also concedes that the government provided him with the statements on the Friday before the start of trial. The government called Rasa, Ganesrajah and Panneerselvam as its own witnesses the following Tuesday. Vijendira argues that the delay in production impaired his counsel's ability to prepare for trial. However, once counsel had the statements, it should not have taken much time to decide how to bring them to the jury's attention. The government correctly notes that Vijendira does not state what prejudice he suffered by the delay. Vijendira does not state what, if any, preparations he was unable to make regarding the statements.
 
 
 25
 Vijendira cites Perry v. Leeke, 488 U.S. 272 (1989), in support of his argument that "[p]retrial misconduct by the prosecutor which interferes with the effective assistance of counsel does not require a showing of prejudice to constitute ground for reversal." However, Vijendira has not shown how receiving the witnesses' statements on the Friday before trial interfered with the effective assistance of counsel. More importantly, Perry merely pointed out that " '[a]ctual or constructive denial of the assistance of counsel altogether' ... is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." Id. at 280. Perry was addressing situations in which the court ordered the defendant not to consult with his attorney, barred summation at bench trial, or required that the defendant be the first witness. Id. at 280. Nothing remotely similar occurred in this case.
 
 D. Other Claims of Error
 1. Prior Inconsistent Statements
 
 26
 Vijendira argues the prosecutor violated the requirement of Federal Rule of Evidence 613(a) by inquiring about prior inconsistent statements by Rasa and Ganesrajah without disclosing the prior statement to the defense.[2] Rule 613(a) provides: "In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel."
 
 
 27
 The prosecutor asked Rasa who told him the visa had been approved. When Rasa responded Ganasalingam told him, the prosecutor asked: "at your interview last Friday, didn't you say that the defendant himself had told you?" If Vijendira's counsel wanted to examine the statement, he should have made a request to examine it when the testimony was elicited by the prosecution. He did not. The only objection he made was that the witness was not first given a written statement to review (an objection without merit under the clear language of Rule 613(a)) and that there was a lock of foundation.
 
 
 28
 Vijendira argues that he made a Jencks Act request, and this qualfies as a request under Rule 613(a). We disagree. Federal Rule of Criminal Procedure 26.2 places the substance of the Jencks Act in the criminal rules. "Thus the Jencks Act itself is no longer applicable...." Charles A. Wright, Sec. 437, at 586 (1982). Rule 26.2(a) provides:
 
 
 29
 After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government or the defendant and the defendant's attorney, as the case may be, to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter concerning which the witness has testified.
 
 
 30
 Rules 26.2 and 613 have different objectives. Rule 613 "is designed to protect against unwarranted insinuations that a statement has been made when the fact is to the contrary." Fed.R.Evid. 613 advisory committee note. The purpose of Rule 26.2 is to bring out statements not elicited on the stand. A motion under Rule 26.2 is not appropriate where, as here, the statement has already been disclosed to the trier of fact. Therefore, a Jencks Act request cannot be considered the equivalent of a request under Rule 613(a).[3] The prosecution did not violate Rule 613(a).
 
 2. Questions Not Limited to Credibility
 
 31
 Vijendira also claims error because "unsubstantiated foundation in the questions [about the inconsistent statements] was not limited to credibility by a proper instruction to the jury." Vijendira cites United States v. Tavares, 512 F.2d 872 (9th Cir.1975), in support of this argument. In Tavares, we held that prior inconsistent statements of a codefendant were inadmissible to prove the truth of the matter asserted. Id. at 875. The trial court's improper instruction that the jury could consider the prior inconsistent statements as substantive evidence of the defendant's guilt was reversible error because the witnesses' statements were the strongest and the only direct evidence against the defendant. Id.
 
 
 32
 Tavares does not help Vijendira because he did not make a hearsay objection and did not ask the court to instruct the jury it could only consider the evidence for credibility purposes. Furthermore, the statements by Rasa and Ganesrajah were not the strongest or the only direct evidence against Vijendira. Even without this testimony, there was abundant evidence of Vijendira's guilt.
 
 3. Foundation
 
 33
 Vijendira argues: "There is no foundation in the record that the three individuals whose visas were adjudicated by Roper intended to travel to Bermuda when they applied for visas for Ponape. Nevertheless the prosecutor was allowed over Appellant's objection to introduce evidence to such effect in order to prove fraud by Appellant." The contention is without merit. There was more than enough evidence presented to allow a rational trier of fact to find that Vijendira never intended for the aliens to go to Ponape or Bermuda.
 
 4. Miranda Issues
 
 34
 Vijendira argues the district court erred in allowing customs officer Bayless to testify regarding Vijendira's statements made during a custodial interrogation without advising him of his Miranda rights.
 
 
 35
 Federal Rule of Criminal Procedure 12(b)(3) requires motions to suppress evidence to be made prior to trial. Failure to timely move to suppress evidence constitutes waiver, although the court may grant relief from the waiver "for cause." Fed.R.Crim.P. 12(f).
 
 
 36
 The district court was not required to give Vijendira a hearing on the Miranda issue because Vijendira did not show cause for failing to bring the motion to suppress earlier. However, "when the district court considers and resolves an untimely suppression motion on the merits, we may review that decision on appeal." United States v. Booker, 952 F.2d 247, 249 (9th Cir.1991).
 
 
 37
 The court's questioning of Bayless regarding whether Vijendira was in custody could be viewed as considering the motion on the merits. Viewed as such, the court should have heard from Vijendira on the issue before denying the motion. Vijendira's counsel presented arguments on the issue later on in trial, but this was after the court had already made a decision on the motion to suppress.
 
 
 38
 Where no findings of fact are filed by the district court in denying a motion to suppress (and here no such findings were requested), viewing the evidence in the light most favorable to the government, we will uphold the denial of a motion to suppress " 'if there is a reasonable view of the evidence that will sustain it.' " United States v. Rabe, 848 F.2d 994, 997 (9th Cir.1988) (quoting United States v. Harrington, 636 F.2d 1182, 1185 (9th Cir.1980)). A reasonable viewer of all of the evidence could conclude that Vijendira was not in custody. Therefore, the district court did not err in denying the motion to suppress.
 
 5. Exhibits 32 and 34
 
 39
 Vijendira also argues the prosecutor represented that copies of all of her exhibits were provided to Vijendira's counsel prior to the start of trial, but copies of Exhibits 32 and 34 were not provided at any time. Vijendira contends the district court erred in admitting these exhibits.
 
 
 40
 Exhibit 32 is the travel itinerary. The prosecutor explained to the court she meant to attach it to the travel document packet but had overlooked it. The prosecutor said she showed it to Vijendira's counsel the night before she offered it into evidence. Vijendira's counsel objected to it as not being included on any of the exhibit lists, and argued that the prosecutor was withholding a large amount of evidence until the last minute. Vijendira's counsel also disagreed with the prosecutor's statement that he had been provided with a copy of Exhibit 32 the previous night. The district court admitted Exhibit 32 into evidence, because the court saw no real prejudice or any reason why the exhibit should be excluded. The itinerary was also disclosed to the jury through the travel agent's testimony and the testimony of the immigration officer who had custody of Vijendira's file. The district court did not err in admitting Exhibit 32 into evidence.
 
 
 41
 Exhibit 34 is an Advice of Rights form, signed by Vijendira on January 31, before he was questioned by Bayless on February 2. It does not appear from the record that Vijendira's counsel objected to the introduction of Exhibit 34 on the ground it was not listed on the government's Exhibit List.
 
 
 42
 When a defendant raises an issue on appeal that was not raised before the district court, we review for plain error. Fed.R.Crim.P. 52(b)[4]; United States v. Bryan, 868 F.2d 1032, 1038 (9th Cir.1989) (citing United States v. Payseno, 782 F.2d 832, 834 (9th Cir.1986)). In United States v. Olano, 113 S.Ct. 1770 (1993), the Supreme Court delineated limitations on appellate authority under Rule 52(b). First, there must be an actual error. Id. at 1777. Second, the error must be "plain", meaning "clear" or "obvious." Id. Third, the plain error must "affect substantial rights." Id. at 1777-78. In most cases this means that the error must have affected the outcome of the proceedings below. Id. at 1778. Finally, even if the error is plain and affected substantial rights, the court of appeals should exercise its discretion to correct the error only where " 'a miscarriage of justice would otherwise result.' " Id. at 1779 (quoting United States v. Young, 470 U.S. 1, 15 (1985)). This means the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " Id. (quoting Wiborg v. United States, 163 U.S. 632 (1896)). Allowing the exhibit into evidence does not seriously affect the fairness or integrity of judicial proceedings. We reject Vijendira's attempt to raise this argument for this first time on appeal.
 
 
 43
 Vijendira argues that by failing to list Johnson, the investigator and custodian of Vijendira's file, on its witness list, the government violated the pretrial order requiring the government to list its witnesses. However, it does not appear from the record that Vijendira's counsel objected at trial to Johnson's testimony.
 
 
 44
 Vijendira also claims error in the admission of Bayless's testimony because Vijendira argues that the prosecutor actively concealed Bayless' prospective testimony by not putting him on the witness list. However, when defense counsel objected to Bayless' testimony, the court offered him the opportunity to delay cross-examination of the witness until after lunch, presumably to give counsel additional time to interview Bayless. Counsel declined to delay cross-examination. Vijendira has no ground for complaint now.
 
 6. Government Intimidation of Witnesses
 
 45
 Vijendira argues the government systematically intimidated some of the witnesses. None of the conduct Vijendira points to suggests any intimidation by the government.
 
 
 46
 7. Allowing Question Calling for Speculation
 
 
 47
 Finally, Vijendira argues the district court erred by allowing a response to a speculative question. The prosecutor asked Roper: "If in fact you had knowledge that they did not intend to go to Ponape, what effect, if any, would that have had on your issuing that visa?" Defense counsel objected that this question called for speculation. The court instructed the prosecutor to rephrase the question to ask: "Would it have made a difference?" Roper said it would have made a difference, and went on to explain why.
 
 
 48
 Vijendira argues the second question did not remedy the defect. We disagree. Neither question called for speculation. Federal Rule of Evidence 602 states a witness may not testify to a matter unless he has personal knowledge of that matter. Roper had personal knowledge of the fact that if he had different information before him he would have made a different decision. As he later explained, if the applicants had told him they wanted to transit Guam in order to enter another U.S. port of entry, he would have considered there to be a risk that they were intending to immigrate to the United States or seek employment or asylum there.
 
 
 49
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Vijendira has served his sentence, and concedes the sentencing issues he raised in his brief are now moot
 
 
 [2]
 Vijendira's brief cites Federal Rule of Evidence 613(b), but he clearly means 613(a)
 
 
 [3]
 Furthermore, counsel did not make the Jencks Act request after the prosecution inquired about the statement, which is the time counsel should make a request under Rule 613(a)
 
 
 [4]
 Federal Rule of Criminal Procedure 52(b) provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."