**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Calvin HILL, Defendant-Appellant.**

No. 72–3815
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 23, 1973.

Fred L. Cavalli, court-appointed, Atlanta, Ga., for defendant-appellant.

John W. Stokes, Jr., U. S. Atty., William P. Gaffney, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendant Calvin Hill was found guilty by a jury of distributing heroin in violation of 21 U.S.C. § 841(a)(1) (1970) and sentenced by the district court to four years' imprisonment, to be followed by three years' parole. The district court also recommended to the Attorney General that defendant serve his sentence at an institution where he could receive treatment for his drug ad-

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of   New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

diction. Appellant Hill raises several points on appeal, including the sufficiency of evidence to warrant conviction, and the general admission of a witness' prior statement. We affirm.

Stephen T. Garrison, an undercover investigator with the DeKalb County Police Department of Atlanta, Georgia, testified that he and an informant, Stephen Anthony Settles, went to Cassandra Bufford's apartment on Fulton Street in Atlanta in the afternoon of September 26, 1972 to complete the purchase of one-half ounce of heroin for $700. "Sandra" said the arrangements were complete, and introduced Isaiah Grant. Grant made a phone call and then got into an automobile driven by an unidentified individual. With Garrison and Settles following in another automobile, Grant went to a gasoline station on Auburn Avenue where he picked up Hill. Then they drove farther and finally pulled down a side road and stopped. Hill got out of the car and disappeared around a corner.

Grant walked back to Garrison's car and asked for $700. Garrison insisted on a sample first, so Grant went around the same corner as Hill and returned with a piece of aluminum foil containing a white powder. After examining it, Garrison said he was satisfied but said he wanted the rest of the heroin at the same time as the money was exchanged. Garrison then testified that "[i]t was agreed that the party from which the heroin was coming from would be in the bushes slightly to the right and in front of both of the vehicles; that the informant would go up to the bushes and we would receive from the person in the bushes, who I later recognized to be Calvin Hill, the heroin." Grant and Garrison were to remain at the automobiles, and Garrison was to give Grant $700 when Settles signalled that he had the heroin.

Grant walked around the corner where Hill had gone and where Grant had earlier gotten the sample of heroin. Short-

ly after he returned, a man appeared at the bushes with an article of clothing over his face. Garrison identified the article of clothing as a "lady's sock or something to that effect," while Settles thought it was a "dark shirt." Both Garrison and Settles positively identified the man as Hill despite the mask. Settles walked up to the bushes and reached for the heroin, but at that time Hill and Grant drew their pistols. Grant took the $700 from Garrison and then began shooting at Garrison. As Grant and Hill fled, Garrison fired several shots. No one was injured.

The next morning Bufford, Grant, and Hill were arrested. The arresting officer testified that Hill had in his possession money which matched xerox copies of the bills Garrison passed to Grant.

To rebut this evidence, the defense began with testimony by Grant. He acknowledged having pled guilty to an indictment charging Bufford, Grant, and Hill with distributing heroin, and then he elaborated on his scheme:

> I told [Garrison] that I could take care of him. And I didn't actually intend to sell him any dope. What it was, a planned ripoff. Everytime—I ripoff everybody that comes into the neighborhood to buy drugs.
>
> Q Tell us what do you mean by ripoff.
> A This is to take the money away from him, by trickery or by force, whichever, or whatever it takes.
> Q All right.
> A And I was looking for a couple of my friends or a couple of people, you know, always involved with me, and to take care of the business, see.
>
> In the process of me looking for my friend, I ran down on Auburn Avenue for a couple of seconds. Mr. Hill asked me for a ride, Calvin Hill asked me for a ride to a friend of his house by the name of Johnny to pick up his car. I give him that ride.

Q Where did you take him?

A Took him to Gordon Street, I believe it was.

Q All right. Then what happened?

A Well, that was the last I saw of him that day, and to make a long story short, I had a shootout with Mr. Garrison.

Also, he said that the money found in Hill's possession was money Grant gave to Hill's girl friend for payment to Hill on a debt. During cross-examination by the Government, Grant admitted signing a statement at the time of his arrest which named Hill as the person he called. In his statement Grant also said Hill provided the sample of heroin. This statement was introduced into evidence.

The only other defense witness was Hill himself who described his unfortunate childhood, which included crimes of car theft at the age of 14, forgery at the age of 18, and shoplifting at the age of 19. Now at the age of 23, he had not held a steady job for a year, but he said he managed to support his narcotics habit through financial help from his mother and brother. He denied ever selling drugs. On the afternoon of August 26, he said he hitched a ride with Grant only for the purpose of visiting a friend.

## I.

Hill was indicted for aiding and abetting Grant's delivery of the one gram sample of heroin to Garrison. There were no eyewitnesses in the Government's case in chief to verify that Grant received the sample from Hill. Thus, this is essentially a case of circumstantial evidence which must meet the standards summarized recently in United States v. Stephenson, 5 Cir., 1973, 474 F.2d 1353, 1355.

In circumstantial evidence cases, the test of the sufficiency of proof on a motion for judgment of acquittal, and on review of the denial of such a motion, is whether, taking the evidence most favorable to the Government, Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the accused's innocence. United States v. Warner, 5 Cir. 1971, 441 F.2d 821, 825; United States v. Andrews, 5 Cir. 1970, 427 F.2d 539, 540; Surrett v. United States, 5 Cir. 1970, 421 F.2d 403, 405. If the evidence is such that a reasonable person *may* have a reasonable doubt as to the defendant's guilt, the case should be submitted to the jury. On the other hand, a trial judge should not permit a case to go to the jury if the evidence is so scant as to allow the jury merely to speculate or to conjecture as to the defendant's guilt. In other words, a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged. *See* United States v. Bethea, 1970, 143 U.S.App.D.C. 68, 442 F.2d 790, 792.

. . .

Unlike *Stephenson*, where we reversed when the only evidence against the accused was his fingerprint on glassine envelopes and there was no indication whether the print was put there before or after the envelope contained heroin, we have evidence here which placed Hill around the corner where Grant got the sample, and also placed Hill at the bushes nearby where he was supposed to transfer the rest of the heroin. Finally, he was arrested the next day with money obtained from Garrison. The combination of this evidence precluded the accused's hypothesis of innocence that he was at the scene of the crime only to visit a friend.

The minor discrepancies in the testimony by Government witnesses,

such as whether Hill wore a shirt or a sock over his face, do not affect the sufficiency of the evidence in this case. As noted in *Stephenson*, the evidence should be taken in a light most favorable to the Government. Therefore, we must accept the key fact that both Garrison and Settles identified Hill as the man near the bushes.

## II.

As a second point, appellant contends that the "out of Court statement of the co-defendant, Isaiah Grant, was erroneously admitted into evidence by the trial court as substantive proof." This was a prior, sworn, signed statement by defense witness Grant which was inconsistent with his testimony at the trial and which implicated defendant Hill. Defense counsel did not at any time request an instruction limiting the statement's use for impeachment and excluding its use as substantive proof.

■ The Supreme Court decided in California v. Green, 399 U.S. 149, 90 S. Ct. 1930, 26 L.Ed.2d 489 (1970), that the admission of prior inconsistent statements as affirmative evidence does not violate the Confrontation Clause of the Sixth Amendment, because the declarant is testifying as a witness at the trial and therefore subject to full and effective cross-examination. Because the declarant is subject to cross-examination during the trial, even though he was not subject to cross-examination at the time the statement was signed, Dean Wigmore reversed his earlier position in the first edition of his test on Evidence and concluded in his second edition that such statements are admissible for their affirmative testimonial value. 3A J. Wigmore, Evidence in Trials at Common Law, § 1018, p. 996 (J. Chadbourn rev. 1970). *Accord* Proposed Federal Rules of Evidence, Rule 801(d)(1) (approved by Supreme Court on November 20, 1972, but effectiveness suspended by Pub.L. 93–12, 93d Cong., 1st Sess., March 30, 1973). This circuit, however, still adheres to the old orthodox view of Wigmore in his first edition that such statements should be introduced only for the purpose of impeaching the credibility of a witness and not for the purpose of establishing a fact.

■ When a Government witness is involved, the impeaching testimony is limited by the element of surprise. It may be admitted only insofar as it serves to remove the damage which the surprise has caused, and may not be used to smuggle in the testimony which the Government expected the witness to supply. United States v. Gregory, 5 Cir. 1973, 472 F.2d 484.

See also Slade v. United States, 5 Cir. 1959, 267 F.2d 834, 839; Young v. United States, 5 Cir. 1938, 97 F.2d 200, 206.

■ If the witness is a defense witness, there is less potential for abuse since the Government has already presented its case and cannot count on the witness being called and questioned about facts in the statement. Accordingly, we enunciated a rule in Valentine v. United States, 5 Cir. 1959, 272 F.2d 777, 778, which is dependent upon defendant's request for a limiting instruction: "It is the duty of the court, when so requested, to instruct the jury as to the limited purpose for which the impeaching evidence is admitted and advise the jury as to the extent to which the evidence may be considered." *See also* United States v. Cohen, 5 Cir. 1969, 418 F.2d 68, 70, McCormick's Handbook of the Law of Evidence § 34, p. 67 (2d ed. 1972). Therefore, in the circumstances of this case we hold that there is no error preserved on appeal when counsel did not request an instruction to limit the use of a prior inconsistent statement of a defense witness.

Affirmed.