**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John Anthony SISTO,
Defendant-Appellant.**

No. 75–2298.

United States Court of Appeals,
Fifth Circuit.

July 1, 1976.

Theodore J. Sakowitz, Federal Public Defender, Michael J. Rosen, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Barbara D. Schwartz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GOLDBERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant John Anthony Sisto was convicted by a jury on charges relating to his attempt to bring a bottle of liquefied cocaine through United States Customs. Because we find that the trial court plainly erred in failing to caution the jury about the testimony of a key witness, we must reverse and remand for a new trial.

I. *The Trial.*

Sisto was tried on one count of importing a controlled narcotic substance, 21 U.S.C.

§§ 952(a), 960(a)(1), and one count of possession with intent to distribute a controlled narcotic substance, 18 U.S.C. § 841(a)(1). He was declared indigent, and a federal public defender was appointed to represent him. Sisto pled not guilty. Since the disposition of this appeal turns on a careful scrutiny of the effect of an error in the trial, we will review the testimony and arguments in this short trial in some detail.

The Government's first witness, a Miami Customs inspector, testified about his encounter with Sisto on February 10, 1975. Sisto was entering Miami from Cali, Colombia. According to the inspector, Sisto upon routine questioning gave his correct name and said that he had visited Colombia on a pleasure trip for two or three days. Among a few other items, Sisto attempted to declare as an overseas purchase a liquor bottle which appeared to the inspector to have been tampered with. A preliminary test indicated that the bottle contained liquefied cocaine. The inspector then arrested Sisto and notified the Drug Enforcement Administration.

D.E.A. Agent Putsche next testified that after Sisto had been read his *Miranda* rights, Sisto volunteered the statement that he had purchased the liquor bottle for $5.00 from a liquor store in Colombia, and that he did not know that the bottle contained cocaine. A D.E.A. chemist testified that the bottle indeed contained cocaine, in an amount of about 11,000 "hits" (dosage units), with a value of between $12,000 and $40,000. After these three witnesses, the Government rested its case.

Peter Shatney was the first witness for the defense. Shatney testified that he and Sisto, who had occasionally worked for Shatney in Shatney's rug cleaning business, had gone together to Colombia with the intention of purchasing leather goods and other such imports with which they could start a business. The trip was shorter than expected, Shatney said, because he and Sisto were robbed while in Cali, Colombia. Shatney recounted that he was with Sisto almost continuously while they were in Colombia. Just before their departure for Miami from the Cali airport, Shatney said, he had left Sisto for five minutes and upon his return saw Sisto conversing with a long-haired young man, who walked away as Shatney approached. Shatney testified that Sisto then had a liquor bottle which he had not had before, and that Sisto told Shatney that the stranger had asked Sisto to carry the bottle through Customs since the stranger "already had a couple of them." [1] Shatney said he saw the stranger again in the Miami airport.

On cross-examination, Shatney denied that he had ever told anyone that the purpose of his trip to Colombia was to buy cocaine, to liquidize it and to bring it back into this country in a liquor bottle.[2] He admitted having been introduced by his brother-in-law to a man named Chuck. The following colloquy then took place between the prosecutrix (Q.) and Shatney (A.):

Q. Do you remember on or about the 4th day of March, 1975, telling Chuck that you went with Mr. Sisto to help him in operation [sic], that you liquidized this cocaine, that he brought it in for you, although it was his cocaine, that you helped him pour it into the bottle, that—

. . . .[3]

Mr. Shatney, do you remember telling Chuck that you all went to—

---

1. The Government objected on hearsay grounds to Shatney's testimony regarding Sisto's statements about the stranger's statements. The court admitted the testimony but *sua sponte* suggested that the jury should be cautioned that the testimony was admissible only to show that Sisto made the statements and not to show the truth of the statements. The Government agreed with the suggestion, and the jury was so instructed.

2. The trial court overruled a defense objection that this questioning went beyond the scope of Shatney's direct testimony.

3. At this point a defense objection that the prosecutrix was badgering the witness was overruled.

A. No, ma'am.

. . . . .

Q. Did you tell him [Chuck] that the only reason Mr. Sisto got caught was because he did not listen to you?

A. No, ma'am.

Q. Do you remember telling him that you told Mr. Sisto, number one, that he should stay in Colombia longer, that two days is not sufficient, he has to stay at least a week to avert suspicion. Do you remember telling him that?

A. No, ma'am.

Q. Do you remember telling Chuck, as a matter of fact, Mr. Sisto got caught because he looked nervous and had beads of sweat on his forehead?

A. No, Ma'am.

Q. Do you remember telling him that it took a couple of bottles before it was good enough, the seal was good enough, before you would try to bring it into the country?

A. No, ma'am.

Q. Let me ask you this question. Do you not remember this, or are you stating to this Court that you did not say these things?

A. I did not say those things.

Q. Are you telling this Court that you did not go down for the purpose of bringing back liquid cocaine?

A. Excuse me.

Q. Are you telling that you did not go down to Colombia with Mr. Sisto for the purpose of bringing back liquid cocaine?

A. Yes, ma'am.

Q. Are you saying that you never told Chuck that you had done this before and that you now get other people to carry it into the country for you, you never carry it yourself?

A. No, ma'am. I did not say that.

The defendant then took the stand in his own behalf and related that he had received the liquor bottle in question from a stranger in the Cali airport. During the course of a casual conversation, said Sisto, the stranger had "told me he was bringing four bottles of whiskey home and asked me if I would be kind enough to carry one for him." Sisto testified that he agreed to do so, noticed nothing unusual about the bottle, and put it in his suitcase. Sisto in effect conceded that the testimony of the Customs inspector and the D.E.A. Agent was accurate, but maintained that he blurted out the false "liquor store" story only because of his extreme fear and confusion during the gruelling strip search and interrogation he was undergoing.

On cross-examination, Sisto admitted that he had been out of work for three months, and characterized the purpose of his trip with Shatney to Colombia as "pleasure with an inclination toward business"—i. e., they hoped to purchase at least enough wood carvings and similar items for resale to recoup the cost of the trip. As to what arrangements he had made with the long-haired stranger for returning the liquor bottle in Miami, Sisto could remember nothing more specific than the stranger's statement, "I will see you later . . . outside of the Miami airport."

The Government then called as a rebuttal witness Agent Clifford Best of the D.E.A., a/k/a "Chuck." Best testified that while working undercover he had had a conversation with defense witness Shatney on March 4, 1975, almost a month after Sisto's arrest. Best said he posed as a potential purchaser of Shatney's South American cocaine connection, and that the subject of Sisto came up as follows:

As we were talking about how to go to South America and how I would pay him and how we would arrange to meet the connection and how we would smuggle cocaine back, he made the comment that he had a fool-proof way of smuggling it back, that it had never failed him and that was in liquor bottles. At this time I stated to Shatney the information and told him it wasn't fool-proof, that he had had an occasion where somebody had been caught. I mentioned the name of John to Shatney that this guy John got caught recently and Shatney then proceeded to tell me how John got caught and had he followed his instructions,

Shatney's instructions, he wouldn't ever got caught.

At this point the defense objected and a bench conference out of the hearing of the jury was conducted. The objection was apparently grounded on lack of relevancy and on the argument that the testimony that "Sisto got caught makes it a story of conviction." The court responded: "How about their right to present evidence to challenge the credibility of a defendant witness who was called and testified to the contrary?" The defense acknowledged that some such impeachment might be proper, but argued that it was going beyond its proper scope. The objection was overruled.

Back before the jury, the trial judge himself asked Best, "Did he [Shatney] tell you what was the purpose for Mr. Sisto and himself going to Colombia?," and Best responded as follows:

> Yes, he told me that he had made arrangements for he and Sisto to go to Colombia, he had made the arrangements, Shatney, that is, to meet his source for cocaine. That he had been there when they purchased the cocaine, that he had poured the liquor out of a whiskey bottle and replaced it with distilled water and then put cocaine into it and that this was Sisto's bottle.

Asked whether Shatney told him why Sisto got caught, Best answered:

> Yes. He told me Sisto did not take the trip, that was his way of phrasing it, that he had told him to. He said that in other words to smuggle, you have to appear either as a businessman or as a tourist and Sisto did not do this. That Sisto didn't follow his instructions and stay approximately a week, he only stayed a couple days in South America. He told me that Sisto failed to bring back with him other dutiable merchandise that would divert the attention of the Customs Inspector and when he got to Customs he simply had one bottle of liquor to declare and Shatney said that that was

all the inspector could really examine so naturally it would be brought to his attention.

Beyond establishing that Best had never met nor spoken with John Sisto, the defense had predictably few questions for witness Best, whose testimony ended the presentation of evidence.

In her main closing argument, the prosecutrix summarized the testimony of all the witnesses. She reminded the jury that Shatney had told Chuck the "whole story:"

> He [Shatney] said John Sisto got caught because he did not do what I told him to do and he went on to tell the agent, yes, we went down there, I went with him on that trip and he poured that coke with water in the bottle, "we put the cocaine in the bottle." . . . [4]

> He told the agent that he told Sisto not to come back so soon, make believe you are either a tourist or a businessman. Bring in items that you have to pay duty on, he says otherwise they look at you more closely and if you bring in a single bottle that is the only thing they are going to have to look at so they are going to look at it.

> And he told the agent this is why Sisto got caught. That is the testimony that you heard and I believe that is fairly consistent.

> I think you have to go back and put it all together and see if you are going to find you can possibly believe what Mr. Sisto said and what Mr. Shatney came in to tell you and he denied, although he admitted nothing, Chuck denied he ever told him this [sic] or whether you are going to believe that nobody can possibly have brought that bottle in not knowing when the *agent told you that he spoke to Mr. Shatney and was given the whole story and that is exactly how it came in, exactly the way the agent said Shatney told him it would come in and that is how it came in.* (Emphasis added.)

---

4. The defense objected in open court that the prosecution was referring to a statement not in evidence, but the court ruled that the jury

"heard the testimony" and that "they are the sole judges of the facts."

The defense attorney's closing argument was in the main an attempt to deal with the testimony of Agent Best. He tried to persuade the jury that Best's story indicated that Shatney was a cocaine importation ringleader, but that it left open the possibility that Sisto was duped by Shatney and had no knowledge that the bottle contained cocaine. The defense concluded with the following questionable submission:

> I submit to you Agent Best may be this defendant's best witness because he is the man who takes the finger off the defendant and puts it on a witness who is not on trial. A reasonable doubt—if you find there is a reasonable doubt that John Sisto knew that there was a narcotic drug in that bottle, if there is a possibility in your mind then you must find the defendant not guilty.

The prosecution, in rebuttal, seized on the defense's attempt to avoid the impact of Best's testimony:

> I would tell you that the only person who takes Agent Best's finger away from John Sisto is [the defense attorney], no one else.
>
> . . . . .
>
> They did not know he was an agent, they thought he was one of theirs. Obviously Mr. Shatney is not going to give his whole thing away and obviously he had to come in like this. So nobody knew he was an agent.
>
> . . . . .
>
> . . . [Sisto] was not duped. *It was just like the agent told you, they had it planned together, they went in together, and they came out and they got just what they asked for.* They went down

for liquid cocaine and that is what they came back with, just like they asked. I do not think there is any doubt and the Judge will instruct you about what a reasonable doubt is, but I do not think there is any shred of doubt that this man knowingly brought this cocaine into this country. (Emphasis added.)

The defense did not request any instruction from the court limiting the jury's consideration of Agent Best's testimony in any way, and the trial court's final charge to the jury contained no such instruction. Rather, the court charged the jury in general terms on the techniques of weighing testimony and resolving discrepancies, and added the following specific instruction:

> Testimony of government agents is to be considered by you under the same general test that I have just given you. Testimony of a government agent, or a government employee, is to be given the same consideration as that of any other witness, no more or no less weight is to be given such testimony merely because of the official capacity of the government agent.

■ After the jury retired, the trial court made an "observation for the record," in which he discussed the "unusual proposition of law" relating to Agent Best's testimony. The court conceded that Best's description of Shatney's statements to him "practically amounted to direct testimony against Sisto." The testimony was nevertheless admissible, the judge stated, because it was not hearsay, and this was so primarily because the Shatney-Best discussion "rebutted and directly challenged the credibility of the defendant's own witness."[5]

---

5. The trial court also stated:

> The defendant's attorney objected to [Best's] testimony on the ground that it was beyond mere rebuttal and it was in fact hearsay. That is an unusual situation and I just wanted to observe for you in the record as to why it is not hearsay.
>
> Not only was the very man who was said to have said it available to testify but did in fact testify and was in fact called by the defense.
>
> That is the reason it is not hearsay.

The fact that Shatney was available and had testified would not render Best's testimony non-hearsay as to Sisto's actions, either under the traditional rules applicable at this trial, or under the new Federal Rules of Evidence applicable after July 1, 1975. *See* Fed.R.Evid. 801(c). *Cf.* Fed.R.Evid. 801(d)(1)(A).

On the contrary, Best's testimony was admissible only for what the trial court perceived to be the "more important . . ." reason, *i. e.,* the reason noted in text. This apparent confusion over whether Best's testimony was hear-

After deliberating for one hour and thirty-eight minutes, the jury returned a verdict of guilty on both counts.

## II. *Was Best's Testimony Admissible?*

Following the verdict in this case, the defense moved for a new trial substantially on the grounds stated in its objection to the testimony of Best. That testimony, it argued, went beyond the scope of proper impeachment of Shatney's testimony and became hearsay extremely prejudicial to Sisto, denying Sisto a fair trial. The district court denied the new trial motion and appellant asserts that this denial was in error.[6]

As a technical matter, we might avoid this point, since we have determined to reverse and remand for a new trial on a different ground. The issue could conceivably arise again in a new trial, however, and because the law is clear, we find it appropriate to state why appellant's argument is without merit.

As our summary of the testimony of Shatney and of Best indicates, Best's account of Shatney's statements to him directly contradicted the testimony Shatney had given on the stand. Shatney had told the jury that Sisto had received the bottle from a stranger in the Cali airport, and Shatney on cross-examination had denied ever having told a man known as "Chuck" that Shatney and Sisto had gone to Colombia with the purpose of importing cocaine back into the United States in a liquor bottle, or that Sisto had gotten caught because he failed to follow Shatney's instructions. Agent Best testified to a prior statement made by Shatney which was flatly inconsistent with Shatney's trial testimony.

■ It is hornbook law that evidence of prior inconsistent statements of a witness may be admitted to impeach that witness. *See McCormick on Evidence* § 34 (1972). The prior statements may have been oral and unsworn, and "the making of the previous statements may be drawn out in cross-examination of the witness himself, or if on cross-examination the witness has denied making the statement, or has failed to remember it, the making of the statement may be proved by another witness." *Id.*

■ These principles have long been supported by the decisions of this Circuit. *See, e. g., Williams v. United States*, 5 Cir. 1968, 394 F.2d 821, *cert. denied*, 393 U.S. 890, 89 S.Ct. 211, 21 L.Ed.2d 169; *Duarte v. United States*, 5 Cir. 1949, 171 F.2d 971. The cases dealing with cautionary instructions cited in the next section also recognize that prior inconsistent statements are admissible, at least for the purposes of impeachment of an opposition witness. It makes no difference as to the admissibility of such statements that they also tend directly to inculpate the defendant. *See Williams, supra.* In this regard, the only real issue is not whether the prior statements may come in at all; rather, it is whether they must be accompanied by a limiting instruction. As to the first issue raised by appellant, the trial court correctly ruled that the testimony of Best was admissible to impeach Shatney.[7]

The new Federal Rules of Evidence apply to trials after July 1, 1975, and so were not in effect for Sisto's first trial. Since they

say in regard to Sisto may explain the trial court's failure to give a limiting instruction.

6. As appellant concedes, no denial of Sisto's Sixth Amendment right to confrontation could be found in this record, since Shatney, the declarant of the statements about which Best testified, had himself testified and was available for further examination. *See California v. Green*, 1970, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489. Appellant's argument is thus premised on an alleged denial of Fifth Amendment due process.

7. Best's testimony about the statements made by Shatney could not be used against Sisto under the co-conspirator rule, of course, since after the arrest of Sisto any conspiracy had terminated, *see Krulewitch v. United States*, 1949, 336 U.S. 440, 442–43, 69 S.Ct. 716, 93 L.Ed. 790; *United States v. Killian*, 5 Cir. 1975, 524 F.2d 1268, 1272, and, in any event, the statements were not in furtherance of a Shatney-Sisto conspiracy, *see United States v. Martinez*, 5 Cir. 1973, 481 F.2d 214, *cert. denied*, 1974, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 489.

will apply to a retrial, however, we note in passing that with respect to prior inconsistent unsworn statements of opposition witnesses, the traditional rules apparently have not been substantially altered. *See* Fed.R. Evid. 613. *Cf.* Fed.R.Evid. 607 ("The credibility of a witness may be attacked by any party, including the party calling him"); 801(d)(1)(A) (certain prior inconsistent sworn statements are not hearsay).

### III. Was the Failure to Caution the Jury About Best's Testimony Plain Error?

Unquestionably, the trial court would have been in error had it refused a defense request that the jury be cautioned to consider Best's testimony only in relation to Shatney's credibility. *See Slade v. United States*, 5 Cir. 1959, 267 F.2d 834, 839. Best's testimony was clearly hearsay with regard to Sisto's actions, and should not have been considered by the jury as direct evidence of Sisto's guilt. The problem in this case is that the defense made no request for a cautionary instruction. Therefore, our review of the trial court's omission is limited to a search for "plain error." *See* Fed.R.Crim.P. 52(b).

█ We have recently reviewed this Circuit's case law on the circumstances in which a trial court's failure *sua sponte* to give a *Slade* instruction can constitute "plain error." *See United States v. Garcia*, 5 Cir. 1976, 530 F.2d 650 [1976]. From several prior opinions, Judge Coleman in *Garcia* distilled the following general rule,

applicable both before and after the effective date of the new Federal Rules of Evidence:

Plain error appears only when the impeaching testimony is extremely damaging, the need for the instruction is obvious, and the failure to give it is so prejudicial as to affect the substantial rights of the accused.

*Id.* at 656, *citing Upham v. United States*, 5 Cir. 1964, 328 F.2d 661. *See also United States v. James*, 5 Cir. 1975, 505 F.2d 898, *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667; *United States v. Clark*, 5 Cir. 1973, 480 F.2d 1249, *cert. denied*, 414 U.S. 978, 94 S.Ct. 301, 38 L.Ed.2d 222. *Cf. United States v. Beasley*, 5 Cir. 1975, 513 F.2d 309 (finding plain error, in conspiracy prosecution, in trial court's failure to limit effect of codefendant's statements to agents to impeachment of codefendant); *United States v. Hill*, 5 Cir. 1973, 481 F.2d 929, *cert. denied*, 414 U.S. 1115, 94 S.Ct. 847, 38 L.Ed.2d 742.[8]

Other circuits have adhered to a similar rule. In *United States v. Lipscomb*, 6 Cir. 1970, 425 F.2d 226, the court held:

. . . We are of the opinion that the failure of the trial judge to limit through cautionary instructions the jury's consideration of these extra-judicial statements to impeachment purposes requires reversal. Although such an instruction was not specifically requested, it has generally been held that failure to

---

**8.** *Hill* reviewed a trial court's failure *sua sponte* to limit the use of a prior sworn written statement of a defense witness to impeachment. The remaining evidence against the defendant in *Hill*, although largely circumstantial, was very strong—it included two eyewitness identifications of the defendant in very incriminating circumstances. In those circumstances, we declined to reverse for plain error.

The *Hill* court noted that, in the case of Government witnesses, there existed a danger that the Government might "smuggle in," under the guise of impeachment, direct testimony that it had hoped its witness would supply. For that reason, the Government's ability to impeach its own witness was formerly limited by the element of surprise—prior inconsistent statements could be admitted only to remove the damage that the surprise had caused.

(New Fed.R.Evid. 607 seems to abolish this requirement.) Since the danger of this abuse was much less when the Government was seeking to impeach a defense witness, the *Hill* panel reasoned that such a situation presented a less compelling occasion for finding "plain error" in a failure to instruct.

We do not read *Hill*, however, as establishing an absolute rule that a trial court can never plainly err in failing to caution in regard to a prior inconsistent statement used to impeach a defense witness. Rather, we feel that *Garcia, supra*, states the general rule applicable to all such cases, and that the potential for "smuggling in" evidence by the Government is merely one factor to be considered in determining whether the "substantial rights" of the defendant have been affected.

give it amounts to plain error where, as here, the government's case is weak and the statement is extremely damaging. *Jones v. United States*, 128 U.S.App.D.C. 36, 385 F.2d 296 (1967); *Newman v. United States*, 331 F.2d 968 (8th Cir. 1964); *Upham v. United States*, 328 F.2d 661 (5th Cir. 1964). Also see *Benson v. United States*, 402 F.2d 576 (9th Cir. 1968). Here, the testimony brought out during the impeachment process established in large measure the substantive elements of the crime which the government was required to prove . . .

*Id.* at 227.

Applying the rule stated in *Garcia* to the facts of this case, we have no difficulty in concluding that the impeaching testimony was extremely damaging. Indeed, Best's testimony about Shatney's prior statements was nothing less than devastating against Sisto in respect to the one contested issue in the case—whether Sisto knew that the bottle contained cocaine. For the Government, the Best testimony was exactly that. Shatney's alleged statements to Best constituted the only evidence from which the jury could directly conclude that Sisto knew the contents of the bottle.

Likewise, the need for a *Slade* instruction is obvious, and should have been obvious below. The trial judge himself on two occasions noted that the testimony of Best was admissible because it attacked the credibility of Shatney, despite the fact that it "practically amounted to direct testimony against Sisto." *Cf. Lipscomb, supra; United States v. Tavares*, 9 Cir. 1975, 512 F.2d 872. The defense objection that Best's testimony was inadmissible hearsay, while properly overruled, should have underscored

to the court the need for a cautionary instruction.

The first two elements of the Garcia test, then, indicate that it would have been very appropriate for the district court on its own motion to suggest a cautionary instruction with respect to Best's testimony, as it has done earlier in an analogous situation with respect to Shatney's testimony. *See* note 1, supra. Whether the trial court's omission requires reversal turns on the third element of the test—was "the failure to give [the instruction] so prejudicial as to affect the substantial rights of the accused"?

■ As that question implies, the plain error standard in this situation dictates reversal only if we are in doubt as to what the jury's verdict would have been had the proper instruction been given. The structure of our criminal trial system is founded in large part on a belief in the efficacy of the adversary system, and considerations of judicial economy weigh more heavily in our decisions when counsel for the complaining party has failed to bring a potentially reversible error to the attention of the trial court.[9] Such considerations cannot, of course, outweigh a determination that the technically unpreserved error in fact was substantially prejudicial, so we return to that central question.

■ In determining whether or not Sisto's substantial rights were affected by the omission, we must accept two premises as given. First, we must acknowledge that the evidentiary rule limiting the use of prior unsworn inconsistent statements of a witness to impeachment of that witness is a rule based on a sound policy balancing the value of such evidence against possible prejudice toward the defendant. The rule has been criticized,[10] and the new Federal Rules

---

**9.** If the record indicates that counsel for the complaining party deliberately avoided making the proper objection or request, plain error will almost never be found. This court will not tolerate "sandbagging"—defense counsel lying in wait to spring post-trial error. The objections of the public defenders to Best's testimony in this case, albeit improperly grounded, at least tend to show that the defense was not consciously attempting to let an error slip by the trial court's notice. Sisto's lawyers were

not hiding objections below so that they might seek error above.

**10.** *See, e. g.,* 3A J. Wigmore, Evidence in Trials at Common Law § 1018, at 996 (J. Chadbourn rev. 1970); *United States. v. De Sisto,* 2 Cir. 1964, 329 F.2d 929, 933, *cert. denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747; *United States v. Allied Stevedoring Corp.,* 2 Cir. 1957, 241 F.2d 925, 933–34 (L. Hand, J.); *Di Carlo v.*

of Evidence represent some compromise between the traditional rule and its critics,[11] but as to unsworn prior inconsistent statements, this Circuit adheres to the orthodox view that the danger of prejudice, whether from deliberate fraud or from faulty recollection, inherent in the admission of such statements as direct evidence far outweighs any probative value they might have. *See United States v. Garcia, supra,* and cases quoted therein.

Second, we must assume that a properly instructed jury would in fact limit its consideration of Best's testimony to the issue of Shatney's credibility. We have acknowledged that the distinction between using a statement to destroy credibility and using it to establish the stated fact is "a fine one for the lay mind to draw," *Dowell, Inc. v. Jowers,* 5 Cir. 1948, 166 F.2d 214, 219, but *Slade, supra,* and its predecessor and successor cases are bottomed on the conviction that a carefully instructed jury can indeed be led to understand that distinction and to abide by it.

 Operating on those two premises, our review of all the testimony, the arguments of counsel, and the instructions actually given by the court convinces us that the jury verdict must be reversed and the case remanded for a new trial. The only matter about which there can be no doubt is that the testimony of Best was presented to the jury as the only direct evidence of Sisto's knowledge of the contents of the bottle, and must have been a major factor in the jury's deliberation.

As we have suggested, we reach this determination not solely on the basis of the court's failure to caution, but on that omission taken with the affirmative effects of the prosecution's closing argument and the trial court's actual instructions. In regard to Sisto's knowledge, the prosecution exhorted the jury, "the agent told you that he spoke to Mr. Shatney and was given the whole story and that is exactly how [the bottle] came in, exactly the way the agent said Shatney told him it would come in and that is how it came in." Again, in rebuttal closing argument, the prosecutrix argued to the jury that Sisto must have known the bottle contained cocaine because "[i]t was just like the agent told you . . ."

Overruling a defense objection that the prosecution's closing argument referred to statements not in evidence, the trial court told the members of the jury that they "heard the testimony" and that they were "the sole judges of the facts." The trial court's caution to the jury about the limited purpose for which Shatney's recounting of Sisto's statements could be used might well have apprised the jury that if its consideration of any testimony was to be restricted, the judge would so indicate. Following the bench conference on the defense objection to Best's testimony, the court itself elicited testimony from Best regarding "the purpose for Mr. Sisto and [Mr. Shatney] going to Colombia." Finally, the court instructed the jury, in effect, to consider Agent Best's testimony in the same way they considered all the other testimony. The intent of this instruction, no doubt, was to caution the

---

*United States,* 2 Cir. 1925, 6 F.2d 364, 368 (L. Hand, J.).

Despite the criticism, every circuit follows the "orthodox rule" that "prior inconsistent statements may be used to impeach, but should not be treated as having any substantive or independent testimonial value," *United States v. Tavares,* 9 Cir. 1975, 512 F.2d 872, 874. *See* cases cited, *id.* at 874–75 n.6. For an article supporting the orthodox view, see Reutlinger, "Prior Inconsistent Statements: Presently Inconsistent Doctrine," 26 Hastings L.J. 361 (1974).

**11.** The strongest criticism had been directed at the limitation as applied to sworn prior incon-

sistent statements, and statements made in specified judicial proceedings are no longer considered hearsay. Fed.R.Evid. 801(d)(1)(A). As originally drafted by the Advisory Committee, Rule 801 would have defined prior inconsistent statements out of the hearsay rule entirely, but the final result in effect codifies the orthodox rule with respect to unsworn statements. *See United States v. Tavares, supra* note 9, 512 F.2d at 875 & n.7. The new rules do remove any limitation on impeachment of a witness by the party calling that witness. *See* Fed.R.Evid. 607.

jury not to make credibility choices on the basis of who wore a badge, but its effect, taken with the other remarks of the court and the prosecution, must have been to encourage the jury to treat Best's testimony as direct evidence of Sisto's knowledge.[12]

Our conclusion that the consideration of Best's testimony as the only direct evidence of Sisto's knowledge must have been a major factor in the jury's deliberation leaves us unable, in view of the remainder of the evidence on that issue, to conclude that the jury, if properly instructed, would necessarily have reached the same verdict. While evidence, *inter alia*, that Sisto attempted to declare at Customs a liquor bottle full of cocaine, and, upon its discovery by officials, told a story he later admitted to be false, would be sufficient evidence upon which a conviction might be based, that is not the standard here applicable. There was other evidence ·in the record which tended to exculpate Sisto, and although his story about the long-haired stranger is not, from this record, very persuasive (especially in light of Best's testimony), we cannot say that it is absolutely implausible. Were we convinced that the jury rejected Sisto's defense on some basis other than Best's testimony, we could affirm, but this record makes Best's testimony seem quite central. His testimony should have been peripheral, but was not. We simply cannot conclude that this jury, if properly instructed, would necessarily have found beyond a reasonable doubt that Sisto knew the contents of the bottle. Rather, we are certain only in our uncertainty as to what the jury's reaction to the case would have been, absent the tainted use of Best's testimony, and so we must reverse and remand for a new trial.

■ We add one final caveat. Our decision today is not to be taken as an indication that plain errors henceforth will be easily found in these situations. Rather, we reaffirm the holdings and import of *Garcia, James,* and *Clark, supra.* We will find plain error in a trial court's failure *sua sponte* to give a *Slade* instruction *only* when the impeaching evidence is extremely damaging, the need for the instruction is obvious, and the remainder of the Government's case is not strong. These factors are present in this case, and were exacerbated by the prosecution's closing arguments and the trial court's actual instructions, which together tended to emphasize the impeaching testimony as direct evidence. We expect, however, that future cases in which these factors coalesce will be rare, and we reemphasize the responsibility of trial counsel to assist the trial court in avoiding error, and the implicit sanction for failure in that responsibility which is reflected in the "plain error" standards.

REVERSED and REMANDED.

---

12. In this respect, the instant case is similar to *United States v. Tavares, supra* note 9. There the trial court over objection had instructed the jury, on the basis of a California evidentiary rule, that it might consider the prior inconsistent statements of a witness not only as evidence bearing upon the credibility of her live testimony, but also as evidence of the defendant's guilt. Although noting that the validity of the California rule had withstood challenge under the confrontation clause in *California v. Green, supra* note 5, the Ninth Circuit nevertheless reversed, holding that the instruction as an evidentiary rule was contrary to the orthodox common law rule which prevailed in the Ninth and every other circuit, and that the error was not harmless.