# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2011

No. 10-30647

Lyle W. Cayce
Clerk

GREAT WEST CASUALTY COMPANY; JIM PALMER TRUCKING,
INCORPORATED,

Plaintiffs - Appellees

v.

JUAN RODRIGUEZ-SALAS,

Intervenor Plaintiff - Appellee

v.

AAA COOPER TRANSPORT AND/OR AAA COOPER TRANSPORTATION,
INCORPORATED; RAY S. JOHNSON,

Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:07-CV-875

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit
Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-30647

A jury found AAA Cooper Transportation, Inc. and its tractor-trailer driver liable for negligently colliding with another tractor-trailer. The defendants claim the district court made an erroneous evidentiary ruling and also that the jury's award was excessive. We AFFIRM.

## FACTUAL AND PROCEDURAL HISTORY

On November 27, 2006, two tractor-trailers collided on Interstate 20 in Louisiana. The accident was between a tractor-trailer driven by Juan Rodriguez-Salas and owned by Jim Palmer Trucking, and a tractor-trailer driven by Ray Johnson and owned by AAA Cooper Transportation. Salas had been ahead of the AAA Cooper vehicle prior to the collision which caused his tractor-trailer to roll over. Salas sustained injuries to his right shoulder.

Jim Palmer Trucking and its insurance carrier sued Johnson and AAA Cooper in the United States District Court for the Middle District of Louisiana. The plaintiffs sought to recover for property damage to their trailer and for Salas's medical expenses. Salas intervened to seek additional recovery from AAA Cooper for pain and suffering, lost wages, and other damages. AAA Cooper counter-claimed against all parties, alleging that Salas caused the accident by veering into AAA Cooper's tractor-trailer.

At trial, truck driver Rodolfo Hyman testified for the plaintiffs. Hyman was the only non-party eyewitness to the accident. He testified that AAA Cooper's tractor-trailer was in the right lane behind Salas's tractor-trailer and that Salas's did not veer into the left lane. AAA Cooper's tractor-trailer attempted to move into the left lane to pass, but "didn't clear and hit" Salas. According to Hyman, AAA Cooper's tractor-trailer should have been going more slowly.

The plaintiffs introduced additional evidence that AAA Cooper's tractor-trailer caused the accident. The evidence included a piece of fiberglass from the front of AAA Cooper's tractor-trailer that had lodged itself in the rear of Salas's

2

No. 10-30647

tractor-trailer.  The police officer who responded to the accident testified that this evidence was consistent with a rear-end collision.

During the defendants' presentation of evidence, AAA Cooper's driver Ray Johnson testified that Salas was driving at 25 miles an hour without the use of safety flashers.  Johnson claimed he was able to move into the left-hand lane, but Salas then started "coming over."  He testified the vehicles tapped each other and the drivers lost control.  Johnson said that after the accident, Hyman told him, "I seen the guy [Salas] come over, you know.  He was going slow."  On cross-examination, Johnson admitted that he saw Salas's tractor-trailer in front of him but did not react until he was only two truck lengths away.

The jury concluded that the defendants were solely liable for Salas's injuries.  It awarded Salas $38,000 for lost wages; $120,000 for pain, suffering, and mental anguish; and $10,000 for loss of enjoyment of life.  The jury also awarded Jim Palmer Trucking stipulated sums for property damage to its tractor-trailer and for Salas's medical expenses.

The district court entered judgment on the verdict and denied AAA Cooper's post-trial motions.  AAA Cooper timely appealed.

## DISCUSSION

*I.    Limitation of Cross-Examination About Prior Statement*

AAA Cooper sought to cross-examine Rodolfo Hyman, the driver of a vehicle not involved in the collision, about a statement he allegedly made to the defendant's investigator on the telephone.  AAA Cooper argues the court created erroneous procedural hurdles that hampered the cross-examination.  AAA Cooper wanted the jury to consider evidence that Hyman earlier had said that Salas caused the accident by driving too slow and by drifting into the left lane.

Evidentiary rulings are reviewed for an abuse of discretion.  *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 355 (5th Cir. 2010).  Even if an error in an

evidentiary ruling is shown, reversal is warranted only if harm occurred to a substantial right of the aggrieved party. *Id.*

Hyman testified that AAA Cooper's driver caused the accident. On cross-examination, AAA Cooper sought to impeach his testimony by showing that it was inconsistent with what Hyman told an investigator in a transcribed telephone call the day of the accident. Hyman was asked if he remembered "talking to Ms. Wiley [the investigator] and telling her in a recorded statement that the Jim Palmer truck was coming -- [.]"

At that point, counsel for Jim Palmer Trucking objected. He argued that "if there is impeachment, that the witness be presented with the testimony to see if he recalls it." After the jurors were excused, counsel continued by arguing that if the statement were read as part of the cross-examination, "the cat's kind of out of the bag. So I would ask the Court to hold him to his foundation and his predicate if the witness doesn't recall it, then I guess we have to have an impeachment witness come testify." The district court directed that a copy of the transcript of the Hyman-Wiley telephone call be provided to counsel for Jim Palmer Trucking prior to continuation of the argument on the issue.

It is difficult to know with certainty what understandings of Rule 613 were operative at trial. The colloquy between the court and the attorneys was littered with half-sentences and short statements devoid of context. It is clear the district court did not want the statement read to the witness until he answered whether he recalled making a statement to the investigator. The district court had this to say:

> You can't read [the prior statement] to [Hyman] because that's extrinsic evidence of the statement, but you can ask him if he recalls giving a statement to Ms. . . . Wiley, or the circumstances surrounding that, you know, and maybe he remembers and maybe he doesn't. But if he doesn't admit that the statement is his, you have to introduce it through somebody else. . . . You would have to

No. 10-30647

bring in Ms. Wiley and have her testify about the circumstances surrounding him giving the statement.

AAA Cooper's counsel indicated his agreement:

Exactly, Your Honor. And I, I understand. I think, first, I have to confront him with the statement, did you give a statement to so, to so and so . . . under the conditions. If [Hyman] says, "I don't recall," "Do you recall telling Ms. Wiley," not reading it -- and I haven't read it yet -- just saying, "Do you recall telling her these things, these points?"

After additional exchanges with the court, AAA Cooper's attorney seems to finish the thought he started above: "if he says, 'I don't recall talking to Ms. Wiley,' then I've got to bring her in as an impeachment witness . . . ."

This response to the judge's ruling suggests counsel did not seek to introduce the language of the statement – he was "not reading it" to the witness, counsel announced – at least until the witness testified he recalled talking to Wiley. Instead, counsel sought initially only to confront the witness with some general identifying aspects of the statement. Counsel also seemed to agree that if Hyman did not recall the statement, the next step would be to call Wiley. Even if the attorney was just summarizing his understanding of the judge's ruling, no effort was made to explain any objection to that approach.

We now turn to the language of the relevant evidentiary rule:

(a) Examining witness concerning prior statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the

5

> interests of justice otherwise require. This provision does not apply
> to admissions of a party-opponent as defined in rule 801(d)(2).

Fed. R. Evid. 613.

This wording does not require that the prior statement be admitted into evidence. *Id.* Neither does the Advisory Committee Note to this Rule. *Id.* advisory committee note; 4 Weinstein's Federal Evidence § 613.02[1], at 613-5 (Joseph M. McLaughlin ed., 2d ed. 2011). The prior statement is a prod to testimony, not substantive evidence. *See* Weissenberger's Federal Evidence § 613.1, at 362 (6th ed. 2009). Unless the prior statement is admissible hearsay, "its only function is to aid the trier of fact in assessing the credibility of the witness." *Id.* The district court may give a limiting instruction to make this clear to the jury, mindful that "the legal distinction between using a statement to destroy credibility and to establish the stated fact is a fine one for the lay mind to draw." *Slade v. United States*, 267 F.2d 834, 839 (5th Cir. 1959) (quotation marks and citation omitted); *see United States v. Watkins*, 591 F.3d 780, 787 (5th Cir. 2009).

Rule 613(a) has no language prohibiting the use of a summary or even a direct quotation from the prior statement within a question asked in cross-examination. The exact boundaries of this tolerance are unmarked. Rule 613(a) simply states that a questioner may examine a witness "concerning a prior statement made by the witness . . . ." Fed. R. Evid. 613(a). The Sixth Circuit has held that an attorney's "question which incorporated the prior statement is a traditional means of confronting a witness with a prior inconsistent statement." *Rush v. Ill. Cent. R.R. Co.*, 399 F.3d 705, 720 (6th Cir. 2005).

It also is unnecessary to authenticate the statement when the witness is being impeached with it. "There is no requirement under the Federal Rules of Evidence that a prior inconsistent statement be presented to a witness, let alone authenticated by him or her, before the statement is used as a topic for

No. 10-30647

cross-examination." *N.L.R.B. v. Bakers of Paris, Inc.*, 929 F.2d 1427, 1436 (9th Cir. 1991). "Rule 613 gives greater weight to surprise than to warning as a technique for ferreting out the truth." Weinstein § 613.02[2][b], at 613-8.[1] An attorney may attempt to impeach a witness on cross-examination with unforeseen and uncomfortable questions. The substance of the statement will be revealed – the bag indeed will release its cat – but that is a key part of the balance that Rule 613 strikes.

One safeguard against misuse of Rule 613 is that the statement "shall be shown or disclosed to opposing counsel" upon request. Fed. R. Evid. 613(a). That permits opposing counsel to protect against "unfair insinuations or misleading questions by making appropriate objections." Weissenberger § 613.2, at 363. Other protections some courts have identified "to alleviate the danger that an impeaching party might act in bad faith" include use of the district court's inherent power to control the trial, the availability of limiting instructions, the availability of other witnesses to rebut the impeachment, and the fact that "if extrinsic evidence of an allegedly inconsistent statement is not forthcoming, the non-impeaching party can highlight this fact in his or her closing argument." *United States v. Gholston*, 10 F.3d 384, 388-89 (6th Cir. 1993); Weinstein § 613.05[1], at 613-16 (same); *see also United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987) (district court retains "discretion to manage the trial in a way designed to promote accuracy and fairness").

This circuit has had few opportunities to interpret Rule 613(a). None of the parties to this appeal have cited much caselaw on this issue. Rule 613(a) contains "no requirement that a prior oral statement, which happens to have been recorded in writing, [must] have been 'adopted' by a witness prior to its use for impeachment in the witness's examination." *Jankins v. TDC Mgmt. Corp.*,

---

[1] Despite the objection at trial, Jim Palmer Trucking has not on appeal briefed any argument that AAA Cooper committed a discovery violation.

21 F.3d 436, 442 (D.C. Cir. 1994) (citations omitted); *see Bakers of Paris*, 929 F.2d at 1436.  A district court errs when it requires a witness to first "acknowledge[] or accept[]" a prior oral statement before being impeached with it.  *Jankins*, 21 F.3d at 442.[2]  Indeed, the explicit language of Rule 613(a) reveals that one of its purposes was to abolish the requirement that the statement be presented to the witness before its use for cross-examination.  Fed. R. Evid. 613(a) advisory committee note.

A district court may consider curbing lengthy quotations if, for example, the attorney appears primarily to be placing highly prejudicial language before the jury.  On the other hand, the more abstract the interrogator's summary, the more susceptible it becomes to an objection for being unrepresentative or misleading.  *Cf. Jankins*, 21 F.3d at 442 (reading impeaching document verbatim was potentially deceptive when the document was itself only another party's summary of the witness's statements).

AAA Cooper's counsel did not argue that he could use the statement in the way we just indicated.  Instead, he seemingly accepted the approach described by the court, namely, to avoid using the words of the statement until the witness indicated he recalled it, and failing that, to call Ms. Wiley.  The district court did not reversibly err in preventing further examination of Hyman about the statement unless he testified to recalling it, inasmuch as the attorney conducting the cross-examination accepted that approach as the proper one.

When the cross-examination resumed in the presence of the jury, AAA Cooper's attorney asked Hyman whether he recalled talking "to a Ms. Wiley,

---

[2] Of some persuasive importance, perhaps, a leading trial practice textbook suggests as a best practice that the witness be confronted with a prior inconsistent statement "by reading the appropriate parts to the witness and asking him to admit having made it.  Use the actual words of the impeaching statement." Thomas A. Mauet, Trial Techniques 281 (6th ed. 2002).  What is most effective and what is permitted can differ, but we find no authority prohibiting the technique.

No. 10-30647

Tammy Wiley?" Hyman said, "I don't recall the name." A few questions were then asked about Hyman's personal information, such as his address and phone number, in an apparent effort to determine the accuracy of the details in the transcript of his telephone conversation with Wiley. After a few such questions, the attempt to examine Hyman with the prior statement was dropped.

Still open in light of the district court's ruling was calling Wiley and trying to admit the statement through her. We will describe how that opportunity was used. One prerequisite for introducing extrinsic evidence of an inconsistent statement is that "the witness is afforded an opportunity to explain or deny" the statement. Fed. R. Evid. 613(b). Counsel who uses a statement as impeachment is not required to introduce it into evidence. *Id.*; Weinstein § 613.05[1], at 613-16. If extrinsic evidence of the statement is offered, though, Rule 613(b) sets out the procedure for its admission.

If a prior inconsistent statement is offered for evidence, it must be authenticated through the usual process applicable to all evidence. *See* Fed. R. Evid. 901. We recently decided a case about the interplay of Rules 613(b) and 901, and need not retrace our steps today. *See United States v. Isiwele*, 635 F.3d 196, 199 (5th Cir. 2011). In summary, if the witness denies or cannot recall making the prior statement, it may be authenticated through another witness. *United States v. Devine*, 934 F.2d 1325, 1344 (5th Cir. 1991); *United States v. Sisto*, 534 F.2d 616, 622 (5th Cir. 1976).[3] In such an event, the witness may be retained and recalled to afford him "an opportunity to explain or deny" the

[3] In *Devine*, we held that "[p]roof of such a [prior inconsistent] statement may be elicited by extrinsic evidence only if the witness on cross-examination denies having made the statement." *Devine*, 934 F.2d at 1344 (citing *United States v. Sisto*, 534 F.2d 616 (5th Cir. 1976)). We are not confident that *Devine* was a complete statement of the law. In *Sisto*, an earlier and thus controlling case, we held that "if on cross-examination the witness has denied making the statement, *or has failed to remember it*, the making of the statement may be proved by another witness." *Sisto*, 534 F.2d at 622 (quoting McCormick on Evidence § 34 (1972) (emphasis added); *see* Weinstein § 613.05[3][a], at 613-21 (same).

statement. Fed. R. Evid. 613(b); *see* 28 Wright & Gold, Federal Practice and Procedure § 6205, at 527 (1993).

One day after Hyman's cross-examination, counsel for AAA Cooper proffered a transcript of Hyman's prior recorded statement. Counsel also proffered the testimony of Ms. Wiley, and stated, "all Ms. Wiley would do is come in and authenticate, 'Yes, this is - - I took his statement. This is a transcript of it.'" Counsel for AAA Cooper did not argue that it should be allowed to call Wiley and introduce the statement through her. The court at the time of the proffer indicated, as did opposing counsel, that Wiley could actually testify if offered in person.[4] Perhaps Wiley was not readily available on short notice.

The vague discussion by everyone at trial leaves little upon which to base error. "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009) (citation omitted); *see* Fed. R. Evid. 103(a)(1)-(2). An aggrieved proponent of evidence has a similar burden:

> [E]xcluded evidence is sufficiently preserved for review when the trial court has been informed as to what counsel intends to show by the evidence and why it should be admitted, and this court has a record upon which we may adequately examine the propriety and harmfulness of the ruling.

*Wright v. Ford Motor Co.*, 508 F.3d 263, 276 (5th Cir. 2007) (quotation marks, emphasis, and citation omitted).

---

[4] The record contains the following exchange between counsel for Great West Casualty and the court:

MR. DILL: I'm a little confused, Judge, because he has the opportunity to call a witness and, and --
THE COURT: Oh, yes, he does. Yeah.
MR. DILL: And, and I understand he wants to --
THE COURT: And he's not, he's not --
Later, counsel for AAA Cooper acknowledged, "I mean, we can bring her down and say, 'Yes, I took his statement,' that's it. It's in the proffer . . . ."

No. 10-30647

This record indicates that most of what is permitted under Rule 613 could have been accomplished. The district court may have too quickly stopped the impeachment of Hyman, but the court also stated that counsel would be allowed to offer the statement through another witness. Counsel seeking to impeach Hyman accepted the accuracy of the ruling, or at least never clearly argued for a different approach. The court's ruling allowed Wiley to be called as a witness for her to authenticate the statement and, presumably, to have it introduced into evidence. If extrinsic evidence were admitted, then Hyman would have needed to be "afforded an opportunity to explain or deny the same," but no ruling on the need or right to recall Hyman was ever requested. Fed. R. Evid 613(b).

This may not have been a necessary manner in which to proceed under Rule 613, but such steps may have allowed most of the value of the desired impeachment to be gained. In light of the manner in which this issue was presented at trial, there was no reversible error.

## II.    *Remittitur of the General Damages Award*

AAA Cooper seeks a reduction in Salas's $130,000 general damages award, which is composed of $120,000 for pain, suffering, and mental anguish, and $10,000 for loss of enjoyment of life. AAA Cooper argues that Salas suffered injuries to one shoulder only, was under treatment for approximately eight months, was not permanently disabled, and did not provide independent corroboration of mental anguish. It compares Salas's injuries to those sustained by plaintiffs in several allegedly similar cases in Louisiana, and concludes that $40,000 is an appropriate award.

> In a diversity case, we apply the new trial or remittitur standard according to the forum state's law controlling jury awards for excessiveness. Our review under that standard is for abuse of discretion only, and we must give the benefit of every doubt to the judgment of the trial judge.

No. 10-30647

*Learmonth v. Sears, Roebuck and Co.*, 631 F.3d 724, 735 (5th Cir. 2011) (quotation marks, citations, and brackets omitted). "[B]efore a court may order a remittitur, it must first determine that a new trial is warranted." *Foradori v. Harris*, 523 F.3d 477, 503 (5th Cir. 2008) (describing standards of review this court has applied to remittitur).

Louisiana law establishes remittitur as an alternative to a new trial, and only when the "trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only." La. Code Civ. Proc. art. 1814. The remedy is effective "only with the consent of the plaintiff or the defendant as the case may be," and even then, "is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case." *Id.*

The district court found a new trial unnecessary, citing sufficient evidence of "Salas's injuries, medical treatment and recovery, and the effect of both on his work and daily actvities, to reach a fair determination of his general damages and lost wages." The court also observed that AAA Cooper had put on "little or no evidence" to rebut Salas's testimony, the doctor's testimony, or Salas' exhibits. The court concluded that the "[d]efendants are simply asking the court to substitute their assessment of the weight and credibility of the witnesses testimony for that of the jury."

The record reveals sufficient evidence to support Salas's award, including his testimony of his injuries, testimony from doctors, and medical records. The jury could have found Salas credible, as the district court did. "Anticipating that witness credibility may later become an issue, the court carefully observed Salas's testimony. He seemed to be honest, forthcoming, not evasive, and he did not exaggerate." To the extent Salas's award varies from those in other Louisiana cases, it is likely because those cases presented different facts. The

jury did not grant Salas his full request for damages ($165,000), nor did it exceed that amount.  The district court did not abuse its discretion.

*III.     Remittitur for the Lost Wages Award*

AAA Cooper asks us to reduce the jury's award for Salas's lost wages from $38,000 to $20,944 or $18,384.   AAA Cooper's proposed amount would compensate Salas for the wages he lost during his period of medical treatment, but not for his job search after he became healthy enough to work.  AAA Cooper argues that Salas was terminated because his employer independently investigated the accident and deemed it "preventable." AAA Cooper denies that any misstatements by its tractor-trailer driver to the police officer – asserting that Salas was at fault – caused Salas's termination, because Salas's employer could not have received the police report by the time it fired Salas.

The legal standards for remittitur and a new trial have been discussed. To receive the benefits of remittitur, AAA Cooper must persuade this court that a new trial is required, and then Salas has the choice of accepting the remittitur amount or taking the new trial.

The district court did not abuse its discretion in rejecting a new trial.  A reasonable jury could have found that AAA Cooper's driver's statements to the police officer caused Salas's termination.  A jury could also have concluded that Salas's employer had in fact relied upon the erroneous police report.  Salas's $38,000 award was reasonably based on his average earnings over a 13-month period.  The award is not against the great weight of the evidence.

AFFIRMED.