89 F.3d 833
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
v.
ALLEN PETROLEUM COMPANY OF EAST TENNESSEE, INC., d/b/a Okee
Dokee No. 18, Defendant-Appellant.
 No. 94-5355.
 United States Court of Appeals, Sixth Circuit.
 June 12, 1996.
 
 Before: BROWN, MARTIN, and SILER, Circuit Judges.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission ("the EEOC") brought this action against the Allen Petroleum Co. ("the company"), alleging that it violated the Age Discrimination in Employment Act ("the ADEA"), 29 U.S.C. §§ 621-34 (1988 & Supp. IV 1992), when it dismissed Ola Williadean Brown ("Brown"), then fifty-four years old, from her job as a clerk/cook at the Okee Dokee # 18 convenience store in Fall Branch, Tennessee. A jury returned a verdict for $19,779.08 in back pay, and the district court entered a judgment for that amount plus $19,779.08 in statutory liquidated damages. The company now appeals, claiming that the district court erred in (1) excluding, as unduly prejudicial, evidence of turmoil in Brown's personal life during the months preceding her dismissal, (2) terminating the company's redirect examination of a witness because the company's attorney communicated with the witness during a recess, (3) admitting testimony regarding statements which, the company alleges, should have been excluded as hearsay, and (4) denying the company's motion for a remittitur. For the reasons set forth below, we REVERSE and REMAND for a new trial.
 
 I. BACKGROUND
 
 2
 In the fall of 1990, Brown worked at Stacey's Market in Fall Branch. In October 1990, the company bought Stacey's Market and renamed it Okee Dokee # 18. In the interests of preserving continuity in the store's operations and service, the company encouraged Brown and the other employees of Stacey's Market to apply for employment with the company. Brown applied on October 30, 1990, and within a few days, Jim Van Dyke, the company's General Manager, hired her. Brown testified that she understood that she would be a probationary employee for a period of 180 days, during which she could be terminated for any nondiscriminatory reason. Shortly thereafter, Van Dyke hired Maureen Seymour to manage the store, and Sherry Cox as the assistant manager. Trial testimony revealed that, during the next couple of months, Seymour became dissatisfied with Brown's attitude and the quality of her work. Seymour testified that Brown was lazy, was slow in performing tasks, and that she had a habit of taking too many "cigarette breaks," especially when the store was busy and there were customers to serve.
 
 
 3
 Seymour's concerns about Brown's performance resulted in a written reprimand which Seymour discussed with Brown.[1] Seymour testified that she remained dissatisfied with Brown's performance after the reprimand, and that she finally discussed firing her with Van Dyke. On January 15, 1991, after discussing the matter further with Van Dyke, Seymour met with Brown and dismissed her. Brown then filed a complaint with the EEOC, which investigated the circumstances of her dismissal and initiated this action. After the district court entered the jury's verdict in favor of the EEOC and awarded more than $38,000 in damages to Brown, the company filed this appeal.
 
 II. ANALYSIS
 
 4
 A. The exclusion of the company's proffered evidence of turmoil in Brown's personal life was not an abuse of discretion. The district court should, however, have allowed the company to question Brown and her former coworkers about any workplace discussions between Brown and her coworkers concerning matters that might have affected Brown's work performance.
 
 
 5
 The company anticipated that the EEOC would offer the testimony of Rita Stacey Keys, Brown's supervisor at Stacey's Market, to show that Brown had been a good employee when she worked for Stacey's Market. Thus, the company sought to introduce various evidence of turmoil in Brown's family during the months that the company employed Brown. This evidence would have shown (1) that Brown's husband was an alcoholic, (2) that he had lost his driver's license after being arrested for driving while intoxicated, (3) that her son also was an alcoholic, (4) that her son was going through a divorce and was likely to lose custody of Brown's grandchild, and (5) that these concerns had caused Brown psychiatric problems for which she had sought treatment and had taken medication. The company hoped to introduce this evidence as an explanation of why Brown had become a poor employee after having been a satisfactory employee for Keys.
 
 
 6
 Just before the trial began, the court and the parties discussed whether this evidence was admissible. First, the court indicated that it would exclude the evidence on the grounds that it was irrelevant, stating: "You got to prove that she couldn't do the job, not necessarily why [she couldn't]...." Later in the same colloquy, however, the court indicated that it was excluding the evidence because it would be unfairly prejudicial to the EEOC's case, stating that "the probative value of it is, is--the prejudicial effect outweighs it tremendously." Moreover, the district court prohibited the company from asking Brown or her coworkers about whether she had talked with her coworkers about problems in her personal life that could have affected her work performance.
 
 
 7
 In reviewing a trial court's decision to admit or exclude evidence on the basis of relevancy [or] unfair prejudice, ... two factors must be considered. First, a reviewing court will not reverse such a decision on appeal absent a showing of a clear abuse of discretion. Conklin v. Lovely, 834 F.2d 543, 551 (6th Cir.1987). Second, even if the lower court's decision amounts to an abuse of discretion, it will not be disturbed on appeal if it did not result in a substantial injustice, as "no error in the admission or exclusion of evidence is ground for reversal or granting a new trial unless refusal to take such action appears to the court to be inconsistent with substantial justice." McGowan v. Cooper Indus., 863 F.2d 1266, 1271 (6th Cir.1988).
 
 
 8
 Zamlen v. City of Cleveland, 906 F.2d 209, 215-16 (6th Cir.1989), cert. denied, 499 U.S. 936 (1991). This is a difficult standard for an appellant to overcome, and the company has failed to overcome it here.
 
 
 9
 While the record is not completely clear on this point, it appears that the district judge excluded the proffered evidence on the theory that it would be unduly prejudicial to the EEOC's case, rather than because of a finding that it was irrelevant. After considering that evidence "in the light most favorable to [the company], [and] giving the 'evidence its maximum reasonable probative force and its minimum reasonable prejudicial value,' " Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 587 (6th Cir.1994) (quoting Laney v. Celotex Corp., 901 F.2d 1319, 1320-21 (6th Cir.1990)), we conclude that the district court's exclusion of the evidence was not a "clear abuse of discretion." Federal Rule of Evidence 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." The probative value of the proffered evidence was minimal given that the issue was whether Brown's job performance was lacking, not why it was lacking. The tenuous connection between Brown's family concerns and whether she was doing a poor job at work would have been easily outweighed by the danger of unfair prejudice to the EEOC--and therefore to Brown--had the district court admitted the evidence.
 
 
 10
 Evidence is unfairly prejudicial if its introduction would lead to an "undue tendency to suggest a decision on an improper basis." United States v. Rey, 923 F.2d 1217, 1222 (6th Cir.1991). In this case, admission of the disputed evidence could have had the impermissible effect of presenting to the jury the inference that a person with a difficult family life cannot be an adequate employee. To give the jury the opportunity to decide this case on that basis would not have served the interests of justice and could have resulted in unfair prejudice to the EEOC's case, and thus to Brown.
 
 
 11
 That having been said, however, we hold that the district court committed reversible error in refusing to allow the defendant to question Brown and her coworkers about any conversations between Brown and the coworkers, while at work, concerning matters that might have affected Brown's work performance. While we do not think the district court should have allowed the introduction of extrinsic evidence of Brown's personal problems, the company should have been allowed to question Brown and others regarding Brown's workplace conversations on the topic.
 
 
 12
 B. The district court did not commit reversible error in terminating the company's redirect examination of its president.
 
 
 13
 During the trial, the company called its president, Carol Estep, to the stand. After the EEOC questioned Estep on cross examination about several prior statements she had made, the company began a rather lengthy redirect examination during which the court called a short recess. During the recess, the company's trial counsel walked up to Estep, who was still on the witness stand, and began talking with her and pointing to her deposition. As soon as court was called back into session, the EEOC attorney brought this exchange to the attention of the court and, contending that her adversary had been improperly "coaching" Estep, asked that the court terminate the redirect examination. The court agreed that the company's lawyer had acted improperly, and after determining that the company's redirect examination was almost over anyway, terminated the examination.
 
 
 14
 On appeal, the company argues that the district court erred in terminating its examination of Estep and maintains that it was unfairly prejudiced because it was not allowed "to present a full defense." Federal Rule of Evidence 611(a) vests in the district court the discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." "This rule gives the trial judge substantial discretion," United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir.), cert. denied, 502 U.S. 950 (1991), and we will disturb a trial court's decision on a matter of courtroom management only upon a finding that the court committed an abuse of discretion that seriously damaged the appellant's right to a fair trial. Elgabri v. Lekas, 964 F.2d 1255, 1260 (6th Cir.1992).
 
 
 15
 We hold that the district court abused its discretion in terminating Estep's testimony. The record reveals that the court never declared that the rule regarding the separation of witnesses was in effect, nor did it admonish the parties and attorneys against talking to witnesses during trial recesses. The termination of Estep's testimony is not reversible error, however, since the company has not shown that the error damaged its right to a fair trial. The company's attorney admitted that he had only one remaining question for Estep when the court terminated the examination, and that he was simply going to ask her to read a passage from her deposition. Nonetheless, in its brief to this court, the company asserts that "[t]o remove the corporate representative from the stand in the middle of redirect examination without explanation to the jury is clearly prejudicial and unfair to [the company]." We disagree. We do not think a jury would prejudge a party's case solely because that party's witness, who had already been thoroughly interrogated by both parties, did not continue her testimony after a recess. We think it more likely that the jury would conclude that the witness simply had nothing more to add.
 
 
 16
 C. The district court committed plain error in failing to give a limiting instruction after admitting otherwise inadmissible hearsay as impeachment evidence.
 
 
 17
 During the first day of the trial, the EEOC called Michelle Penley, a clerk at Okee Dokee # 18, to the stand. The EEOC elicited, inter alia, that on the day Brown was fired, Penley was called in to work. Penley testified that she knew why she had been called in, inferring that she knew Brown was being fired. When asked how she knew, Penley responded that Sherry Cox, the assistant manager, had told her. At that point, the EEOC attorney asked: "What did Sherry tell you?", and the company objected, claiming the answer would be hearsay. The EEOC protested that, since Cox was an assistant manager, the court should consider the answer an admission by a party opponent under Federal Rule of Evidence 801(d)(2)(D), and thus not hearsay. The court, however, after determining that Cox was expected to testify, sustained the objection stating: "I hate to make us go by the rules, but I think we have to wait until [Cox] comes on and she denies it, otherwise--."
 
 
 18
 The following day, just prior to the EEOC's resting its case, the court and counsel discussed in more detail the matter of Penley's testimony. The EEOC explained to the court that Penley was expected to testify that Cox told her that Brown had been fired because of her age, and the attorneys argued further over whether employment matters were within the scope of Cox's employment. Finally, the court again determined to allow the EEOC to question Cox about her statement and then, if she denied it, to allow Penley to testify.[2]
 
 
 19
 A short time later, at the start of its defense, the company called Cox to the stand. During direct examination, Cox testified that no one ever suggested to her that age was a factor in Brown's termination. Later, on cross examination, Cox specifically denied ever telling Penley that Brown had been fired because of her age. The EEOC then called Penley as a rebuttal witness, and she testified that Cox told her that Brown had been fired because "she was too old and she was too slow." The company did not request that the court instruct the jury to limit its consideration of this Penley testimony to its impeachment value, nor did it reassert its hearsay objection.
 
 
 20
 On appeal, the company renews its argument that Penley's testimony was hearsay, arguing that because Cox was not involved in decisions to hire and fire, any statements she may have made in that regard were not within the "scope of [her] agency or employment" as required by Rule 801(d)(2)(D).[3] The EEOC counters that matters of employment were within the scope of Cox's agency because she was responsible for making out employee work schedules and answering employees' questions about those schedules. In Hill v. Spiegel, Inc., 708 F.2d 233 (6th Cir.1983), we applied Rule 801(d)(2)(D) to somewhat similar facts. In that case, we concluded that it is not within the scope of a manager's agency or employment to comment on the reasons for an employee's discharge unless that manager was "involved" in the decision to discharge the employee. Id. at 237. Since there is no evidence that Cox was involved in the decision to fire Brown, we conclude that Penley's testimony about her alleged statement was hearsay, and thus was inadmissible as substantive evidence.
 
 
 21
 Although, at oral argument, counsel for both sides insisted that the district court admitted Penley's rebuttal testimony about Cox's alleged statement under Rule 801(d)(2)(D) as evidence of a vicarious admission of the company, a close examination of the record reveals that the court may have admitted Penley's rebuttal testimony as evidence of a prior inconsistent statement about a noncollateral matter, which could impeach Cox's credibility. Though the parties did not brief or argue the point, this is the only possible explanation for the district court's refusal to allow Penley to testify regarding Cox's alleged statement that Brown was fired because of her age until after Cox had, in her direct testimony as a defense witness, denied making the statement. If indeed this was the district court's intent, the issue becomes: Did the court err in allowing this impeachment evidence without instructing the jury to limit its consideration of Penley's testimony to its effect on Cox's credibility, and not to take the testimony as evidence that the company fired Brown because of her age?
 
 
 22
 Federal Rule of Evidence 105 states: "When evidence which is admissible ... for one purpose but not ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Since the company failed to request a limiting instruction, we review the matter for plain error only. United States v. Lipscomb, 425 F.2d 226, 227 (6th Cir.1970). As we stated in Lipscomb, we will find that the failure to give a limiting instruction in such a situation "amounts to plain error where ... the government's case is weak and the statement is extremely damaging." Id.; see also United States v. Sisto, 534 F.2d 616, 623 (5th Cir.1976) ("Plain error appears only when the impeaching testimony is extremely damaging, the need for the instruction is obvious, and the failure to give it is so prejudicial as to affect the substantial rights of the accused." (citation omitted)). After reviewing the precedents, we find that this test was developed almost entirely in criminal cases tried prior to the advent of the Federal Rules of Evidence. Nonetheless, we can apply it in civil cases as well.
 
 
 23
 Applying the Lipscomb test, we conclude that Cox's statement, admitted through Penley's testimony, was extremely damaging. In fact, the jury could, in theory, have based its verdict on the alleged statement of Cox alone, as it could have taken the alleged statement to prove the essential element of the case, i.e., that the company fired Brown because of her age. The difficult question is: How weak was the plaintiff's case without the statement? In considering this question, "we must assume that a properly instructed jury would in fact limit its consideration of [Penley's] testimony to the issue of [Cox's] credibility." Sisto, 534 F.2d at 625. Proceeding on this assumption, the only direct evidence of age discrimination that would have been available to a properly instructed jury came from Brown herself. Brown testified that Seymour told her that she was "too old," and that other employees were scheduled for more hours because they were younger. Moreover, the circumstantial evidence admitted at trial is completely equivocal. Thus, we find that the EEOC's case was weak without Cox's statement.
 
 In Sisto, the Fifth Circuit stated:
 
 24
 Were we convinced that the jury rejected [the defendant's] defense on some basis other than [the tainted impeachment] testimony, we could affirm, but this record makes [the] testimony seem quite central. [The impeachment] testimony should have been peripheral, but was not. We simply cannot conclude that this jury, if properly instructed, would necessarily have found [in the government's favor]. Rather, we are certain only in our uncertainty as to what the jury's reaction to the case would have been, absent the tainted use of [impeachment] testimony, and so we must reverse and remand for a new trial.
 
 
 25
 Sisto, 534 F.2d at 626 (emphasis added). Like the Sisto court, we simply are not convinced that, with the benefit of a limiting instruction, the jury would have reached the same conclusion in this case. We therefore hold that the district court's failure to give a limiting instruction was plain error.
 
 
 26
 D. The district court did not err in refusing to grant a remittitur.
 
 
 27
 The company asserts that the jury's award of more than $19,000 in back pay damages was excessive because, it claims, Brown failed to mitigate her damages adequately. The company bears the burden of proving a failure to mitigate damages. Rasimus v. Michigan Dep't of Mental Health, 714 F.2d 614, 623 (6th Cir.1983), cert. denied, 466 U.S. 950 (1984). To do so, the company had to prove (1) that "substantially equivalent positions were available," and (2) that Brown "failed to use reasonable care and diligence in seeking such positions." Id. at 624. Moreover, "[w]here a jury grants a particular damage award and the district court refuses to disturb that finding, an appellate court should be certain indeed that the award is contrary to all reason before it orders remittitur...." In re Lewis, 845 F.2d 624, 635 (6th Cir.1988). Brown testified that she sought employment throughout the back pay period, and the record reflects that she actually found three different jobs and held each for a brief period of time. J.A. at 147-50. Considering that Brown was fifty-four years old with only an eighth-grade education, we cannot say it was "contrary to all reason" for the jury to determine that Brown made an adequate attempt to mitigate her damages.
 
 III. CONCLUSION
 
 28
 Because the district court erred in prohibiting the company from questioning witnesses about workplace conversations in which Brown may have discussed personal problems which were affecting her work performance, and because it erred either in admitting Penley's rebuttal testimony as substantive evidence, or, if it was admitted as impeachment evidence, in failing to instruct the jury to limit its consideration of Penley's testimony to its effect on Cox's credibility, we REVERSE and REMAND for a new trial.
 
 
 
 [1]
 Brown denies having any knowledge of the reprimand or discussing it with Seymour. The written reprimand does, however, bear Brown's signature, according to the testimony of a handwriting expert
 
 
 [2]
 The district court actually said: "[W]hen [Cox] comes I'll let her testify and I'm going to let [Penley] testify what she learned about it. So, I'm going to overrule the exception." J.A. at 385
 
 
 [3]
 Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay if it "is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship...."